# HARTFORD LIFE INSURANCE COMPANY *v.* BARBER.

## ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Nos. 252, 253. Argued November 5, 6, 1917.—Decided November 19, 1917.

In a suit against a life insurance company by its certificate holders, it was adjudged by a court of the State of the company's domicile and in which were its funds that, subject to a limitation as to amount, the company might keep up as theretofore a mortuary fund which it had been its custom to replenish and maintain through assessments made by the executive officers under supervision and control of the board of directors. In a later action in a court of another State, such an assessment was held void, in spite of the judgment, upon the grounds, first, that the assessment exceeded the power of the company and the limit fixed by the judgment, and, second, that it was not made by the board of directors as required by the company's charter. *Held,* that the second ground of the decision, even if it did not itself deny full faith and credit to the judgment and the charter, was at most a mere make weight, which could not be treated as an independent local basis of decision, and that this court was therefore at liberty to review and reverse the decision upon the first ground, as one denying full faith and credit to the judgment with respect to the amount of the assessment.

The Connecticut judgment considered in *Hartford Life Insurance Co. v. Ibs,* 237 U. S. 662, providing that any excess in the mortuary fund above the average amount of the four preceding quarterly assessments, in the Men's Division of the Insurance Company's Safety Fund Department, must be distributed to certificate holders by crediting such excess on account of the next succeeding assessment, authorized the company, in assessing for a given quarter, to levy an amount sufficient not only to reimburse the fund for losses accrued at the time of levy, but also sufficient, when added to the balance on hand, to maintain the fund up to the average amount of the last four quarterly assessments, for the purpose of meeting future losses promptly, as they occurred. In holding that an assessment was void because it exceeded the difference between such average amount and the amount remaining in the fund after de-

ducting death losses up to the time of levy only, the Supreme Court of Missouri failed to accord the judgment full faith and credit.

269 Missouri, 21, reversed.

THE cases are stated in the opinion.

Mr. *James C. Jones,* with whom Mr. *F. W. Lehmann* was on the briefs, for plaintiff in error.

Mr. *Charles E. Morrow,* with whom Mr. *Robert Kelley* was on the briefs, for defendant in error, while contending that the court below had correctly applied the Connecticut judgment, urged that this court was without jurisdiction because the decision rested on an independent non-federal ground, viz: That the assessment was void because not levied by proper authority, and because no record was made or kept of it. The charter of the company places the management of its affairs in its board of directors and the assessment made by the president and secretary was a nullity. It called for the exercise of discretion on the part of the directors and this power cannot be delegated. *Farmers Milling Co.* v. *Insurance Company,* 127 Iowa, 314; *Farmers Mutual Ins. Co.* v. *Chase,* 56 N. H. 341; *Garretson* v. *Equitable &c. Assn.,* 93 Iowa, 403; Bacon on Benefit Soc. & Ins., § 377. No such delegation was attempted. It is incompetent to show that it was a custom of the president and secretary to make assessments without authority, unless it further appears that the insured had knowledge of it. Niblack on Benefit Societies, § 252; *Underwood* v. *Legion of Honor,* 66 Iowa, 134.

The assessment in one of the suits was void because it included money for taxes erroneously claimed to be exacted under the laws of Missouri.

Counsel also contended that the court below gave full faith and credit to the company's charter, as to the powers

of the officers and directors respecting assessments, and that the constitutional objection in this regard was made too late under the Missouri practice; also that this court had no jurisdiction to pass upon the questions whether there was a delegation and whether the insured knew of the alleged custom if it existed, etc., because they involved determination of fact, which this court may not do on writ of error.

MR. JUSTICE HOLMES delivered the opinion of the court.

These are suits upon two certificates of qualified life insurance issued to Frank Barber and payable at his death to his wife, the plaintiff—defendant in error here. The defence in both suits was the same; that Barber failed to pay a mortuary assessment levied on January 29, 1910, known as quarterly call No. 126, and that the failure avoided the policies by their terms. It set up further that, in a suit brought by one Dresser on behalf of himself and all certificate holders, including the plaintiff, in the Connecticut court having jurisdiction over the defendant and the mortuary fund from which alone, by the contract, death losses were payable, it was adjudicated on March 23, 1910, that if a certificate holder failed to pay a mortuary assessment the company could not pay the insurance in case of his death.

At the trial the Connecticut judgment was offered and excluded and the jury were instructed that the defendant must prove that an assessment was made by the directors of the company and that it was not for a larger amount than was necessary to pay death losses up to that time after giving Barber credit for his *pro rata* share in the mortuary fund; that if there was money on hand in that fund, and unless the defendant had "so proved," it could not declare the insurance forfeited on that account. This instruction was in the teeth of the Connecticut adjudica-

tion which held that it was proper and reasonable for the company to hold a fund collected in advance in order to enable it to pay losses promptly. The plaintiff recovered judgments and these were sustained by the Supreme Court of Missouri. 269 Missouri, 21. The defendant says that it was denied its constitutional rights by a failure to give due faith and credit to the judgment of the Connecticut court.

The transactions were of the class before this court in *Hartford Life Insurance Co.* v. *Ibs*, 237 U. S. 662, which arose on a similar contract and a failure to pay the call next after the one in question here. In that case the character of the business arrangements was explained and it was decided that the Dresser judgment binds all certificate holders of the class to which Barber belonged. The Missouri court, indicating some dissatisfaction with the company and the judgments in Connecticut and here, sought to justify a different result by distinctions that seem to us unreal. The first is that at the end of the quarter for which the assessment was levied, that is on December 31, 1909, after deducting all losses in respect of which the assessment was laid, there was still left, of the fund out of which the losses were paid, over $50,000, which the assessment would increase to over $375,000; that $300,000 was all that was allowed by the contract "as modified by the [Connecticut] judgment"; and that the assessment therefore was excessive and void. The other distinction attempted is that the charter requires all of the affairs of the company to be managed and controlled by a board of not less than seven directors, and that the assessment was not levied by the board.

It is obvious on the evidence that this assessment was levied in the usual way adopted by the company and tacitly sanctioned by the Connecticut judgment. Quarterly mortality calls were provided for and were regularly made in this way for the appointed dates. A jury would

have been justified, at least, in finding that the call was made by the directors within the meaning of the instructions although it did not appear that the directors went over the figures of the officers who made it up, and voted it specifically. It clearly was made under the directors' management and control. The verdicts for the plaintiff hardly could have been rendered except upon the other ground opened by the instructions, that the assessment was for a larger amount than was necessary to pay death losses up to that time. Upon that ground the verdicts were a matter of course, and we regard the reference to the directors' part in the assessment as a make weight which adds nothing to the substantial basis for the decision below. See *Terre Haute & Indianapolis R. R. Co.* v. *Indiana,* 194 U. S. 579, 589. The powers given by the Connecticut charter are entitled to the same credit elsewhere as the judgment of the Connecticut court. *Supreme Council of the Royal Arcanum* v. *Green,* 237 U. S. 531, 542.

As we have said the instruction was in the teeth of the Connecticut judgment by which under the *Ibs Case* the plaintiff was bound. The verdicts were based upon fundamental error, and the only real question in the case is whether it appears as matter of law that under correct instructions the same result must have been reached. The Connecticut judgment was that any excess in the mortuary fund above the average of the four preceding quarterly assessments in the Men's Division of the Safety Fund Department (taken for the purposes of these cases to be $300,000), shall be distributed to certificate holders in diminution of assessments by crediting the excess on account of the next succeeding assessment. This contemplates a possible excess and does not limit the assessment to a sum equal to the difference between $300,000 and the fund on hand after deducting the deaths that had occurred at the time when the assessment was levied,

as was assumed by the Missouri court. Deaths were occurring between the time of the levy and the time when so much of it as might be paid would be paid in. The assessment was for the purpose of keeping up a fund of $300,000 to meet deaths promptly, as they occurred. Without giving the figures in detail it is enough to say that it clearly appears that the amount of the assessment, $322,378.48, was not in excess of what the subsequently rendered Connecticut judgment allowed. It necessarily was levied as an estimate. There was no probability that it would lead to even a temporary excess over $300,000, to be applied to the next assessment laid. We are of opinion that full faith and credit was not given to the Connecticut record and that for that reason the present judgments must be reversed.

*Judgments reversed.*