**THROWER v. KISTLER et al.**

No. 3309.

District Court, E. D. South Carolina.

Jan. 18, 1936.

The report of the special master, L. D. Lide, follows:

This cause was instituted in the court of common pleas for Marlboro county, S. C., upon a complaint alleging the recovery of a judgment in that court against the defendant Kistler, as administrator of the estate of Ace Thrower, deceased, and that the defendant National Surety Corporation, a New York corporation, had fraudulently taken charge of and converted to its own use all the assets of its predecessor, National Surety Company, which was the surety on the administrator's bond, and an accounting is sought against the National Surety Corporation for the assets of its predecessor and judgment against it for the amount alleged by plaintiff to be due. The cause was removed to this court upon the ground of diversity of citizenship, it appearing that although Kistler was a resident, the actual controversy was with the National Surety Corporation. This court overruled the motion to remand, and the Supreme Court of South Carolina affirmed the order of the circuit judge holding the case to be indisputably removable. Thrower v. Kistler, 174 S.C. 479, 178 S.E. 126.

By his order dated December 27, 1934, Hon. Frank K. Myers, United States District Judge, referred the cause to me to take the testimony and report the same, together with my findings of fact and conclusions of law, reserving all rights of exception and review. Pursuant to this order I have held references at which the testimony herewith filed was taken.

### Findings of Fact.

There is no substantial dispute as to the facts of this case, the controversy being mainly with regard to the inferences to be drawn from the facts and the application of the apposite legal principles. J. Harry Kistler was appointed administrator of the estate of Ace Thrower, deceased, by the probate judge of Marlboro county, and National Surety Company was the surety on his bond. A judgment was obtained against him, as administrator, in the court of common pleas for Marlboro county by the plaintiff in this cause in the sum of $5,053.88, the judgment being based upon the loss of funds in the hands of the administrator which had been deposited by him in a branch of the Peoples State Bank of South Carolina which failed.

National Surety Company was not a party to this action.

The surety on the administrator's bond, to wit, the National Surety Company, was a New York corporation which had long been engaged in the business of writing surety bonds on a large scale, its operations extending over many states, including South Carolina. It was also engaged in allied lines of business, such as the guaranty of the payment of interest and principal on collateral trust bonds issued by various mortgage companies. This company, which will hereinafter be sometimes called the "old company," was perhaps one of the major surety companies of the country, and until the depression appears to have operated with considerable success. But the long continuance of the very extraordinary business depression prevailing in recent years brought about adverse conditions which naturally combined to weaken the financial structure of the company, its business being rather peculiarly responsive to such conditions. Hence early in 1933 it became apparent that the cash resources of the company were inadequate to meet the demands upon it for losses sustained, especially losses arising from the failure of banks and widespread default on the part of mortgagors. So the company was compelled to borrow from the Reconstruction Finance Corporation approximately $11,000,000, which was secured by practically all of its liquid assets. After the bank holiday, which occurred early in 1933 under the emergency decree of the President, rumors regarding surety companies were current, resulting in a large number of cancellations of bonds and policies, calling for the immediate return of substantial funds by way of unearned premiums—somewhat in the nature of a run on a bank.

The affairs of the old company thus rapidly came to a crisis, and it was faced with the necessity of either going into immediate liquidation or effecting some sort of reorganization. The evidence is clear that if there had been a forced liquidation of the company, the probable result would have been the acceleration of the payment of mortgage guaranties estimated to be about $46,000,000; the immediate termination and destruction of bonds and policies representing enormous liabilities in the aggregate; the cancellation of many thousands of fiduciary bonds; the repayment of approximately $40,000,000

by banking institutions (many of them in South Carolina) on account of public deposits; the complete sacrifice of the good will of a company built up over many years and its value as a going concern; to say nothing of the terrific effect on other surety companies; thus further paralyzing the business of the nation. This statement sufficiently indicates that this course would have been destructive of the interests of creditors.

Fortunately, however, the laws of the state of New York afforded facilities whereby the assets of the old company could be conserved to a very considerable extent through a proposed method styled the "Plan of Rehabilitation." Very briefly stated, this plan consisted of the organization of a new corporation hereinafter sometimes called the "new company," to be known as National Surety Corporation, for the purpose of continuing the business of the old company as far as practicable and to preserve from the disastrous effects of forced liquidation many of its valuable assets. It is obvious that a large part of the value of a surety company is its good will as a going concern, and upon liquidation such value entirely disappears; whereas, by continuing the business, with the same agency set up, the demand for return premiums is in the main eliminated, and there is no serious interruption of the normal flow of business. In order to maintain the business as a going concern, it was of course necessary for the new company to assume the risk of future losses, so that there would be no incentive to the policyholders to cancel, that is to say, there was an assumption of *executory risks*. But of course the new company could not, and did not, assume liabilities of the old company which had already been incurred (plaintiff's claim being in this category), for if it had done so there would have been no substantial change in the status and the new company would have been unable to function. Under the plan the new company was to have $1,000,000 capital and $3,000,000 surplus provided from the collateral held by the Reconstruction Finance Corporation. The entire capital was to be held by the Superintendent of Insurance as rehabilitator of the National Surety Company, and so *for the benefit of the creditors of that company*, subject, however, to the pledge of the stock to the Reconstruction Finance Corporation in exchange for the collateral released by it.

I do not deem it necessary to recite the various details of the Plan of Rehabilitation. But I find as a matter of fact from the evidence, after a careful consideration of the testimony, including the exhibits, that this plan, which was effectuated through the Insurance Department of the State of New York, was entirely free from fraud of any kind or other unlawful conduct, and that it was for the benefit and advantage of the creditors of National Surety Company, including plaintiff in the instant cause. The plan was effectuated by a contract between National Surety Company (by the Superintendent of Insurance as rehabilitator) and National Surety Corporation, dated April 29, 1933, and was approved by order of the Supreme Court of New York dated May 3, 1933.

The net result of the plan is that the creditors of the old company now own the business of the new company, which is a going concern with reasonable prospects of success, for the capital stock of which a very substantial offer has already been made, while in the liquidation of the old company little or no salvage could have been expected.

## Conclusions of Law.

Counsel for the plaintiff have presented a very elaborate and earnest argument from which I gather that their main contention is that the Plan of Rehabilitation was a species of *frenzied finance* amounting to a fraudulent transaction, whereby the new corporation took the valuable assets of the old corporation and seeks to escape its liabilities; and that hence equity should annul such a scheme. And they seem to rely upon the general proposition, sustained by a good many authorities, that a corporation which acquires the business and assets of another, *which has sufficient tangible assets in the state to pay its debts*, by merely issuing its capital stock to the old corporation, leaving it no property within the state which can be subjected to the payment of its debts, is bound to satisfy such debts because it becomes a trustee for the creditors of the old corporation to the extent of the assets acquired by the new corporation. Terry Packing Co. v. Southern Express Co., 143 S.C. 1, 25, 141 S.E. 144; American Railway Express Co. v. Kentucky, 273 U.S. 269, 47 S.Ct. 353, 71 L. Ed. 639. But this principle is applicable

only where the facts are as stated and where the transfer is therefore prejudicial to the rights and interests of the creditors. The controlling reason for holding any new corporation liable for the debts of the old is that some species of high finance is involved operating in fraud of creditors; and where the creation of a new corporation and the transfer of assets to it in exchange for capital stock were necessitated by the imminence of liquidation proceedings, the rule could not apply where, as here, the creation of the new corporation was in the utmost good faith and definitely tended to promote the interests of the creditors of the old corporation. Certainly, if the plaintiff in the instant case were allowed to proceed against the assets which were transferred to National Surety Corporation, then all other creditors of the same class could and should likewise proceed, and the result would be the forced liquidation sought to be avoided because destructive of the rights and interests of creditors. I think these views are sustained by the following decisions, as well as others, to wit: In re A. L. Robertshaw Mfg. Co. (D.C.) 133 F. 556; Marine National Bank v. Swigart (C.C. A.) 262 F. 854, 860; Cashman v. Hitchcock (C.C.A.) 293 F. 958; Ozan Lumber Co. v. Davis Sewing Machine Co. (D.C.) 284 F. 161; Smith v. Henry Knight & Son, 211 Ky. 111, 277 S.W. 290; McAlister v. American Railway Express Company, 179 N.C. 556, 103 S.E. 129, 15 A. L.R. 1090; Kingman & Co. v. Mowry, 182 Ill. 256, 55 N.E. 330, 74 Am.St.Rep. 169; Wheeler v. Acme Harvesting Machine Co., 175 Ill.App. 69; Doty v. Love, 295 U.S. 64, 55 S.Ct. 558, 79 L.Ed. 1303, 96 A.L.R. 1438. It should be stated, to avoid any misunderstanding, that the evidence does not show the transfer of *all* assets to the new company, but of course the plan required the transfer of a very considerable portion thereof.

In the Swigart Case, above cited, which was decided by the Circuit Court of Appeals for the Sixth Circuit, Circuit Judge Knappen in the opinion says that of course a court of equity will look through the fiction of a corporation formed for the purpose of accomplishing a fraud, but that fraud is not committed merely because the corporate device was employed, for, as he says, the ultimate question is always one of fact, "viz., actual intent, and 'that intent must be established by proof, fraud must be shown, and the good faith of the transaction must be successfully impeached.'" The facts in the case at bar show, as I have already indicated, that the transfer of assets to the new corporation was in the interest of, and for the benefit of, creditors, and that their rights were subserved and promoted by the transfer; and I therefore conclude as a matter of law that the Plan of Rehabilitation was valid, legal, and binding as to the creditors of National Surety Company, including the plaintiff herein. I may say that I have endeavored to view this phase of the case without reference to any other legal position of the defendant, so that I might reach a definite conclusion as to the real inwardness of the case unprejudiced by any technical consideration.

I shall now consider other legal questions involved, which I think require some discussion. It is contended by counsel for National Surety Corporation that the judgment obtained by the plaintiff against the administrator, Kistler, was not a valid judgment under the evidence introduced before me, and that since the surety was not a party to the suit against the administrator, it is not bound thereby. The testimony on this point was to the effect that Mr. Kistler received a government insurance check which he deposited in the Darlington Branch of the Peoples State Bank. This deposit was made to the credit of a checking account on or about December 22, 1931, and the last day the bank was open was December 31, 1931. The amount on deposit in the bank at the time it closed was the amount of the check, less a doctor's bill of $400. The contention of the defendant is that under the law the administrator was not liable because he deposited current funds in a reputable bank on a checking account. It relies upon the case of Brannon v. Woodward, 175 S.C. 1, 178 S.E. 249, where the Supreme Court of South Carolina held that an administrator is not liable for estate funds deposited in bank which subsequently became insolvent, although court's approval was not obtained; such deposit not being an "investment" as contemplated by statute. On the other hand, counsel for the plaintiff contend that the judgment of the court of common pleas for Marlboro county is *matter adjudicated* and binding upon the surety; the surety being perhaps deemed a privy thereto.

The rule is stated as follows in 24 C. J. 1079, 1080, and is sustained by a wealth of authority: "The generally accepted rule is that a judgment or decree against an executor or administrator is conclusive against the sureties on his bond, although they were not parties to the proceedings, and cannot be collaterally questioned by them in an action on the bond, their only remedy being by way of appeal, writ of error, or application for a new trial, or by a direct proceeding in equity."

As will appear from the note on page 1080 of 24 C.J., there is an interesting conflict of authority in the old South Carolina decisions, some cases holding that such judgment or decree is not conclusive but prima facie evidence only; others, that it is conclusive; and still others, that it is subject to impeachment by the surety only on the ground of fraud or collusion.

The view last expressed appears reasonable. As was said by Judge Evans in the old case of Boyd v. Caldwell, 4 Rich. (38 S.C.L.) 117: "Between a judgment against the intestate, and a judgment against the administrator, there can be no difference as to the conclusiveness of it, unless there be some fraud or collusion between the creditor and the administrator. If an administrator, by fraud or collusion with a creditor, allow him to obtain a judgment on a cause of action which has been paid or discharged, I think the sureties of the administrator might defend themselves on this ground. But if everything was open to them, there would be no end of litigation."

In the case of Bellinger v. United States F. & G. Co., 115 S.C. 469, 106 S.E. 470, the court said, however, that it was settled in this state that a decree of the probate court finding the amount due from the committee of a lunatic is only prima facie binding upon the surety. But this case further holds that the right of impeachment is *limited to the objections set forth in the pleading of the surety.*

There was certainly no fraud or collusion here, and even under the last case cited (if it should be followed, although contrary to the prevailing rule), the judgment stands unimpeached; no grounds of attack by or in behalf of the surety having been pleaded. And my conclusion as a matter of law is that the judgment in question is binding upon National Surety Company, the surety upon the administrator's bond, so far as the record in the case at bar discloses.

The defendant National Surety Corporation contends that the Plan of Rehabilitation hereinbefore referred to having been sustained by the New York courts, the judgment therein rendered is conclusive under the full faith and credit clause of the Federal Constitution (article 4, § 1). It is a matter of interest and importance that on or about May 4, 1933, upon the petition, by way of intervention, of Kenlon Coal Company, Inc., an order was obtained directing that the Superintendent of Insurance and the National Surety Corporation show cause why the court should not restrain and enjoin the execution of the Plan of Rehabilitation and direct that all assets transferred to the National Surety Corporation be redelivered to the Superintendent of Insurance. In due course orders were passed by the court denying the petition of Kenlon Coal Company, Inc., and these orders were affirmed by the Appellate Division of the Supreme Court of the State of New York (Application of People, by Van Schaick, 239 App. Div. 490, 268 N.Y.S. 88), from which an appeal was allowed and taken to the Court of Appeals (People, by Van Schaick v. National Surety Co., 264 N.Y. 473, 191 N. E. 521), and the latter court, being the tribunal of last resort in the state of New York, did on or about March 20, 1934, unanimously affirm the order of the Appellate Division and definitely sustain the power of the Superintendent of Insurance to adopt the Plan of Rehabilitation, and also definitely determined that such adoption was the proper exercise of that power.

There is indeed no doubt of the correctness of the elementary principle that "in determining what parties are concluded or estopped by the record of a judgment rendered in another state the same rules are applied as in the case of domestic judgments," and hence the New York judgment is not conclusive in so far as the plaintiff here is concerned, unless she was a party or privy to the suit. But counsel suggest that full faith and credit must be given to the New York statutes and decrees in all actions by old company creditors because such creditors were privy to all the New York proceedings, by virtue of their representation through the Superintendent of Insurance, and that as to the intervention of Kenlon Coal Co., Inc., it was representative in character of all

creditors of the old company. The further suggestion is made that the New York courts have acquired, pursuant to the statutes of that state, exclusive jurisdiction over the affairs and property of the National Surety Company, and that the jurisdiction of other courts is void under the due process clause of the Fourteenth Amendment. It scarcely seems necessary, however, to pass upon these propositions, in view of my conclusion already stated that the Plan of Rehabilitation should be approved on its merits, and also in view of the fact that the plan has already had judicial approval in South Carolina, as will hereinafter appear. Besides, in any view of the matter, the decision of the New York Court of Appeals is, of course, highly persuasive.

■ The defendant National Surety Corporation further contends that the matter in controversy is res adjudicata by reason of an order signed by Hon. W. H. Townsend, the learned and lamented judge of the Fifth Circuit, dated July 5, 1934, in an action in the court of common pleas for Richland county, S. C., entitled Carolina Contractors Equipment & Supply Company, Plaintiff, v. National Surety Company, Defendant. This order recites that the matter came before the court on a return to a rule to show cause on a petition of the receivers of National Surety Company in South Carolina to investigate the Plan of Rehabilitation and to take such steps as would protect the interests of the creditors of National Surety Company in South Carolina. The court gives the history of the matter and adjudges that the plan "should be adopted and approved by this court, subject, however, to the conditions that the South Carolina creditors who have filed their claims in this proceeding shall prove their claims before the master as herein directed." There appears to have been no appeal from this order.

The plaintiff in the instant cause made herself a party to the foregoing receivership proceedings, being represented by the same capable and reputable counsel she has here, and filed her claim with the receivers appointed therein.

Counsel for plaintiff urge very strongly that the orders granted by Judge Townsend were beyond his jurisdiction, and that a consideration of the entire record, only a part of it being in evidence here, would show that the doctrine of res adjudicata was not apposite. However, it does not appear that there is anything in the complete record, whether introduced in evidence or not, which would in any way vacate or set aside Judge Townsend's order of July 3, 1934. It therefore stands as the law of the case, binding upon all parties and privies thereto; and I am unable to resist the conclusion that it is res adjudicata as to the plaintiff herein. And of course it may be added that in my opinion the conclusion reached by Judge Townsend was correct.

■ It might further be stated that at the reference in this cause I allowed the defendant to amend its answer so as to set up the defense just discussed, concluding that such amendment would not take counsel for plaintiff by surprise and should be allowed in furtherance of justice.

■ Counsel for defendant, pursuant to permission granted by me, have filed numerous objections to the testimony in order to preserve their exceptions. My conclusions hereinbefore set forth are, I believe, based only on relevant, competent, and material testimony, and would indicate that some of the testimony objected to should have been excluded. But especially in view of the fact that this case is being tried by the court without a jury I think the evidence objected to was properly admitted in order that the court might have the complete picture; and while some questions may not have been precisely in proper form, and the examination here and there may have gone somewhat far afield, on the whole counsel on both sides seem to have endeavored to comply with the rules of evidence, at least if they are liberally construed, as I am very strongly of the opinion they should be. I therefore overrule all the objections to the evidence.

For the reasons above stated, I recommend that the complaint be dismissed, with costs.

J. E. Dudley, Jr., and J. W. Le Grand, both of Bennettsville, S. C., for plaintiff.

C. E. Gardner and L. M. Lawson, both of Darlington, S. C., and C. W. Muldrow, of Florence, S. C. (White & Case and Roy H. Callahan, all of New York City, of counsel), for defendants.

MYERS, District Judge.

This cause was referred by consent to Hon. L. D. Lide as special master. To his conclusions and recommendations, plaintiff's counsel filed exceptions, the argu-

ments on which, together with full briefs submitted, have been considered.

The conclusions of fact set out in the able and carefully prepared report of the special master are amply supported by the testimony; and I can see no reason why said findings, together with the conclusions of law of the said special master, should be disturbed.

It appears that, notwithstanding notice to plaintiff's counsel of the time and place within which the claim set out in the complaint herein might be filed with the Superintendent of Insurance of the State of New York, under the plan of rehabilitation for National Surety Company, the surety on the bond of the defendant Kistler, administrator, plaintiff's counsel preferred to rely upon their right to recover in this proceeding against the defendant National Surety Corporation. Whether the opportunity is now afforded to plaintiff to have her claim proved and heard as against the National Surety Company is a matter for investigation and action of counsel, as their judgment may dictate.

For the reasons stated, and upon the findings made, both of fact and law, by the special master, it is ordered, adjudged, and decreed that the report of the said special master be, and the same is hereby, confirmed, and that the complaint herein be dismissed, with costs.