Civil action to recover premiums paid on non-cancellable income policy of insurance alleged to have been breached by defendant.
Defendant's motion for judgment as in case of nonsuit at the close of plaintiff's evidence was overruled. But, upon renewal thereof at the close of all the evidence, the motion was allowed. From judgment in accordance therewith plaintiff appeals to the Supreme Court and assigns error.
This appeal was argued at the Spring Term, 1938, of this Court, but was carried over to the Fall Term, 1938, for decision, pending decision of the Supreme Court of the United States in the case of Neblett et al.,Interveners, Petitioners, v. Carpenter, Jr., et al., Adv. Ops.,83 L.Ed., 193, involving the validity of judgment of the Supreme Court of California, which is pleaded by defendant herein as bar to the action.
The Supreme Court of the United States in opinion therein having affirmed that judgment, one question, determinative of this appeal, remains for consideration: Is the plaintiff entitled to maintain this action in North Carolina for the recovery of premiums paid upon a noncancellable disability policy breached by authority of law duly decreed by the Superior Court of Los Angeles County, California, in a proceeding instituted by Insurance Commission of that State under the insurance law of that State, for rehabilitation of defendant insurance corporation, in which proceeding other policyholders of the same class appeared on behalf of themselves and all others similarly situated, and to which plaintiff was not a party by actual service of process, or by substituted service of process by attachment of property, or by personal appearance?
Review of the authorities leads us to say that the answer is "No." We deem it expedient for proper understanding of the question and the conclusion reached to state the facts somewhat in detail.
The uncontroverted facts are these: On 4 September, 1931, the defendant, a corporation, organized under the laws of California, engaged in the business of writing life and health and accident insurance, in consideration of annual premium of $228, issued to the plaintiff a disability insurance policy known as non-cancellable income policy providing, among other things, for monthly benefits of $400 during disability, which "consists of continuous, necessary and total loss of business time." *Page 772 
The plaintiff paid four additional annul premiums thereon, but did not pay the premium due 4 September, 1936, of which notice was given. Upon receiving information as to proposed rehabilitation of the company in California, plaintiff declined to pay that premium and on 3 August, 1936, and on several dates thereafter, demanded refund of all premiums, to wit, $1,140, theretofore paid, which was refused.
Plaintiff alleges, among other things, that prior to 22 July, 1936, defendant sought to rescind the contract of insurance, to repudiate liability thereunder and to enter into some scheme or plan for avoiding the payment of the amount contracted to be paid under said policy, and by rescinding the same to deprive plaintiff of benefits, retaining all premiums paid; and that on 29 December, 1936, plaintiff received from defendant copy of an alleged rehabilitation and reinsurance agreement purporting to be an agreement entered into between defendant and the Insurance Commissioner of the State of California, to which plaintiff was not a party, in which agreement it is specifically provided that the insurance contract issued by defendant to plaintiff is repudiated, and that the terms thereof will not be observed by the defendant.
Defendant denies these allegations of the plaintiff, and avers that all things done in, about, and concerning its property, assets and affairs since 22 July, 1936, having to do with the reorganization and affecting the rights of the plaintiff under said policy have been done pursuant to the order of the Commissioner of Insurance of the State of California and orders of the Superior Court of Los Angeles County in said State, a court of record and of general jurisdiction, clothed with and exercising, among other things, general equity jurisdiction, duly entered in that certain proceeding therein pending entitled "Samuel L. Carpenter, Insurance Commissioner of the State of California, Petitioner, v. The Pacific Mutual Life Insurance Company, a Corporation, Respondent," pursuant to the laws of said State and in the exercise of its equity jurisdiction, which order are specifically and in detail pleaded in bar of plaintiff's right to maintain this action.
In reply, plaintiff alleged, on information and belief: That prior to and at the time of the institution of the action mentioned in the answer defendant was solvent and a going insurance company with ample and sufficient funds to meet its obligations as and when same became due and payable; that defendant conceived the idea of repudiating the noncancellable policies for that it appeared that same were not as profitable as other business written by the defendant; that acting by and in concert with its officers, directors and stockholder, defendant, with intent to cheat and defraud the holders of non-cancellable policies, caused the said alleged proceeding to be instituted in the said Superior Court of California, seeking a reorganization with the view of repudiating said *Page 773 
non-cancellable policies and forfeiting the premiums paid thereon, and for the purpose upon the part of the said officers, directors or stockholders of defendant to escape personal liability under the laws of California, by transferring the assets of defendant to a new corporation, which assumed no liability for or under said non-cancellable policy; that plaintiff is a nonresident of the State of California, and is a resident of North Carolina; that no process issuing from the Superior Court of California for Los Angeles County has been served upon him; that he had no property in California subject to attachment or execution; that he has not personally appeared or authorized anyone to personally appear for him in said proceeding; and that the court was without jurisdiction to hear and determine any matter, in rem or in personam, concerning the plaintiff; and that said decrees and agreements had in said proceeding are null and void.
On the trial below plaintiff offered no evidence in support of any of said allegations except those relating to lack of service of process, actual and constructive, and of his personal appearance in the proceeding in California. He offered evidence tending to show that he had received by mail notice informing him of the pendency and purpose of the proceeding in California, of the date and place set for hearing at which he and all interested persons might appear and be heard, of the filing with the Insurance Commissioner of each State in which the defendant did business a copy of the proposed rehabilitation and reinsurance plan and agreement submitted to the court by the Insurance Commissioner for its consideration, and of the order approving the said agreement.
Defendant offered evidence tending to show these facts: For many years it has been engaged, on a nation-wide scale, in the business of writing life, health and accident insurance. Since 1918 it has issued non-cancellable health and accident policies. Immediately prior to 22 July, 1936, the company was doing business in forth-two states and the District of Columbia. It had approximately 225,000 life insurance policyholders with life insurance outstanding in excess of $600,000,000, and approximately 48,000 non-cancellable policyholders. In the western half of North Carolina it had approximately 1,500 life policyholders with insurance amounting to approximately $4,000,000, 450 non-cancellable policyholders, and 170 commercial accident policyholders.
The Insurance Commissioner of the State of California, upon facts revealed through a triennial examination, completed immediately prior to 22 July, 1936, and conducted by him in cooperation with Insurance Commissioners of the States of Ohio, Washington, Texas, Virginia, and Louisiana, in accordance with custom among the members of the National Association of Insurance Commissioners, instituted the proceedings in the Superior Court of Los Angeles County. Exemplified *Page 774 
copies of petitions and orders entered therein were here introduced in evidence, portraying these facts succinctly stated, in part, in the said opinion of the Supreme Court of the United States: "The Insurance Commissioner of California determined that, while the life and general health and accident business was in sound condition, there was an overall deficit in reserves due to the unprofitable nature of outstanding noncancellable health and accident risks, with the result that the company was insolvent within the meaning of the Code. July 22, 1936, the Superior Court of Los Angeles County, on his application, appointed him conservator. On the same day he applied for and obtained an order which appointed him liquidator of the company. On the same day, as conservator, he petitioned for authority to rehabilitate the company and submitted a plan embodying an agreement, to be executed by the company and himself as Commissioner, with a new corporation, which he would form, all of whose capital stock he would purchase with the assets of the company, and to which he would transfer most of the assets, retaining the stock of the new company and certain other assets of the old. The new company was to assume the policies and obligations of the old company to the extent provided in the agreement. Policyholders were to have the option of taking insurance from the new company or proving their claims for breach of their contracts, provision for payment being made by covenants of the new company and the retained assets of the old. The court approved the plan and authorized the execution and performance of the agreement.
"Shortly afterwards it was discovered that the judge who acted in the cause was probably disqualified by ownership of a policy issued by the company. August 11, 1936, another judge entered an order, which, after adverting to the possible disqualification of the judge who made the earlier orders, ratified, approved, and confirmed the order appointing the Commissioner conservator and, on the basis of the petition filed on July 22, independently, and as an original order, appointed the Commissioner conservator, invested him with title to all the company's assets, and authorized him to endeavor to consummate a rehabilitation or reinsurance plan. On September 25 the Commissioner presented a further petition for approval of the rehabilitation and reinsurance agreement, which recited his actions taken pursuant to the court's order and to the plan of rehabilitation, and asked approval thereof. An order issued which directed all interested person to show cause why the agreement, and what had been done pursuant to it, should not be approved and all the prior acts of the Commissioner ratified and confirmed, and fixed a hearing. At the hearing, which lasted from October 19 to December 4, many officers, stockholders and policyholders who had intervened, including the petitioners, were heard. Plans of rehabilitation presented by *Page 775 
some of them were considered; evidence was taken and argument was had. December 4 an order was entered approving the Commissioner's plan and agreement, ratifying the action he had taken, and authorizing him as conservator, and as liquidator, if he should be appointed as such, to carry out the rehabilitation agreement. The court retained jurisdiction to make further orders for the effectuation of the plain and agreement."
Defendant further introduced evidence tending to show that at the hearing (October 19 to December 4) that there were approximately five thousand non-cancellable policyholders represented, who had intervened under orders allowing them to appear "on behalf of themselves and other non-cancellable policyholders similarly situated." The substance of the points made by them against the rehabilitation agreement is: "That it violates the due process clause of the Federal Constitution; that it constitutes a taking of property in violation of the Federal Constitution; that the plan as proposed by the Insurance Commissioner was unfair and discriminatory as against the non-cancellable policyholders; and that the plan as proposed by the Commissioner was the result of a conspiracy and fraud on the part of the officers and directors of the old company to repudiate their obligation to the non-cancellable policyholders . . ." which are substantially the points now raised by the plaintiff in his reply to the answer of the defendant in the instant case.
In the other of 4 December, approving the rehabilitation and reinsurance agreement, it is adjudged, that notice of the hearing has been duly given in accordance with the order to show cause, that such notice constitutes sufficient notice of the hearing, and that all persons interested in the old company, its property and assets, had been given the right to be heard with respect not only to the rehabilitation agreement but also "upon all phases of these proceedings, and upon each, all and every the matters and things herein adjudicated." It is further adjudicated that all policyholders, creditors and stockholders of, and all other persons interested in the respondent corporation were by representation or otherwise, parties to the proceedings; that "they are, and each of them is, bound by all proceedings taken herein and more particularly by the terms of this order." and that all persons are forever barred from proceeding except in accordance with the rehabilitation agreement and plan embodied therein and the decrees in the proceeding.
The Supreme Court of California affirmed the order. Carpenter v. PacificMutual Life Ins. Co., 10 Cal.2d 307, 74 P.2d 761.
The Supreme Court of the United States holds in effect that, as matters of procedure under and construction of State statutes are for the courts of the State, it is without jurisdiction to review the State court's decision of any such questions. But, granting that the method *Page 776 
of liquidation adopted by the Commissioner and approved by the court be authorized by the Insurance Code, the petitioners to the Supreme Court of the United States contended that that method denied them due process and impairs the obligation of their policy contracts. Because of these contentions the writ of certiorari was granted.
In opinion filed the Supreme Court of the United States, speaking with respect to these contentions, said: "One of the petitioners holds a life policy which, if he assents to the plan, will be replaced by a policy of the new company for the same amount. The others are holders of non-cancellable health and accident policies no liability under which has accrued. If they assent to the plan and accept the obligation of the new company in lieu of that of the old, they will receive insurance for only a percentage of the face value of their old policies. The alternative open to all is to dissent from the plan and to prove their claims for breach of their policy contracts against the liquidator of the old company. They insist this option is not available to them as no liquidator has been appointed. When they took their appeal to the State Supreme Court, there was pending an application for the appointment of the Commissioner as liquidator and no reason is assigned why action cannot be taken upon this petition pursuant to the plan. The Supreme Court has said: `The proposal contemplates that in due course the Commissioner will be appointed liquidator of the old company, and in that capacity will receive, liquidate, and pay all claims against the old company from the old company's assets not transferred to the new company (including the new company's stock), and from certain moneys furnished to the liquidator by the new company as provided in the agreement.' The petitioners asserts that the funds provided will be insufficient for the payment of their claims and others of like character, should they dissent from the plan. The order of the Superior Court recites that the plan makes adequate provision for each class of policyholders, for the creditors, and for the stockholders; that the plan is fair and equitable; that it does not discriminate unfairly or illegally in favor of any class of policyholders; that the intangible assets conserved by the plan are worth several million dollars and that if the old company were dissolved and its assets sold their value would be substantially less than the amount which will be realized from them under the plan.
"The record upon which the appeal was taken to the Supreme Court of the State, and which has been brought here by our writ, contains only the judgment roll. The evidence is not before us and the court below has held that, under the State law, the judge was not bound to make special findings. We must presume that there was substantial evidence to sustain the court's decree. On account of the state of the record the petitioners are unable to point to any evidence to sustain their contention *Page 777 
that if they dissent they will not receive as much in liquidation of their claims for breach of their policy contracts as they would upon a sale of assets and distribution of the proceeds.
"The petitioners have no constitutional right to a particular form of remedy. They are not entitled, as against their fellows who prefer to come under the plan and accept its benefits, to force, at their own wish or whim, a liquidation which under the findings will not advantage them and may seriously injure those who accept the benefits of the plan. They are not bound, as were the dissenting creditors in Doty v. Love, 295 U.S. 64, to accept the obligation of the new company but are afforded an alternative whereby they will receive damages for breach of their contracts. They have failed to show that the plan takes their property without due process.
"It is not contended that a statutory scheme for the liquidation of an insolvent domestic corporation is per se an impairment of the obligation of the company's contracts. The argument is that the impairment of contract arises from the less favorable terms and conditions of the new non-cancellable policies which are to be substituted for the old ones, and, in the case of the life policies, by the substitution of a new company as contractor in place of the old, without the consent of the policyholder. This position is bottomed upon the theory that the policyholders are compelled to accept the new company as insurer on the terms set out in the rehabilitation agreement. As has been pointed out, they are not so compelled but are given the option of a liquidation which on this record appears as favorable to them as that which would result from the sale of the assets and pro rata distribution in solution of all resulting claims for breach of outstanding policies."
In the instant case the evidence tends to show that the Insurance Commissioner was appointed liquidator on 2 February, 1937, and is directed to wind up and liquidate the business of the respondent corporation.
Upon the decision of the Supreme Court of the United States affirming the judgment of the Supreme Court of California, it may fairly follow that plaintiff herein is bound by the order approving the rehabilitation and reinsurance agreement.
However, the Supreme Court of California, referring to the proceeding in that State, said: "Section 1057 makes the Commissioner in all proceedings under the provision of the Code the trustee for the benefit of all creditors and other interested parties."
Then, too, class suits are authorized by the Code of Civil Procedure of California, sec. 382, which provides, among other things; "When the question is one of a common or general interest of may persons, or when the parties are numerous and it is impracticable to bring them all before the Court, one or more may sue or defend for the benefit of all." *Page 778 
"The rule is well established that where the parties interested are numerous, and the suit is for an object common to them all, some of the body may maintain a bill on behalf of themselves and of the others; and a bill may also be maintained against a portion of a numerous body of defendants, representing a common interest." Smith v. Swormstedt, 16 Howard, 288, 16 L.Ed., 942. This doctrine of virtual or class representation has been applied in numerous other cases, among those notably pertinent to the factual situation here, are: Hartford Life Ins.Co. v. Ib., 237 U.S. 662, 59 L.Ed., 1165; Hartford Life Ins. Co. v.Barber, 245 U.S. 146, 62 L.Ed., 208; Supreme Tribe v. Cauble,225 U.S. 365, 65 L.Ed., 673; National Surety Corp. v. Nantz,90 S.W.2d 385; Thrower v. Kistler, 14 F. Supp. 217; City ofDetroit v. Detroit United Ry., 197 N.W. 697.
We therefore hold that on this record plaintiff, being of the class of non-cancellable policyholders, who appeared in the proceeding in the Superior Court of California "in behalf of themselves and other noncancellable policyholders, similarly situated," is under the doctrine of virtual of class representation, bound by the orders and decrees entered in that proceeding, and is barred of right to prosecute this action.
The judgment below is
Affirmed.