The defendant, Pacific Mutual Life Insurance Company, has appealed from a judgment enjoining and restraining it from cancelling two certain policies of health and accident insurance which were issued to the plaintiff by the Pacific Mutual Life Insurance Company of California and which were later allegedly assumed by the defendant company by virtue of certain reorganization proceedings conducted in the courts of the State of California.
The facts of the case are not in dispute and we find them to be as follows: On April 11, 1927, the plaintiff, S. Sanford Levy, a practicing attorney of the City of New Orleans, entered into a contract of insurance with the Pacific Mutual Life Insurance Company of California, under which it was provided that, in consideration of the payment by plaintiff of an annual premium of $60, the insurer would pay to him the sum of $250 per month in case he became permanently and totally disabled. On November 1, 1928, the plaintiff entered into another contract of similar insurance with the same company which provided that, in consideration of an annual premium of $25, the insurer would pay to him the sum of $100 per month in case he became permanently and totally disabled. Both of these policies were designated by the insurer as noncancelable policies and all premiums falling due thereunder throughout the ensuing years were paid by plaintiff.
The Pacific Mutual Life Insurance Company of California, which, for the sake of brevity, will hereinafter be referred to as the old company, was considered at the time the policies in suit were issued, to be a substantial and well-managed concern which was authorized to do business in 42 States of the Union. In 1918, the company inaugurated a plan whereby it issued noncancelable health and accident policies in consideration of yearly premiums. Numerous policies of this type, including those issued to plaintiff, were written by the insurance company. During the year 1936, it was discovered by the Insurance Commissioner of California, after a joint investigation with the insurance departments of various other States in which the old company was engaged in business, that the premiums charged for writing these noncancelable health and accident policies were too low for the risks involved and that, as a result, the reserves had become depleted to such an extent that it would be dangerous to permit the company to continue in business. Accordingly, on July 22, 1936, the Insurance Commissioner of California brought a proceeding in the Superior Court of Los Angeles County averring that, while the life and general health and accident business of the old company was in sound condition, there was an over-all deficit in the reserves due to the unprofitable nature of the outstanding noncancelable health and accident risks, with the result that the company was insolvent within the meaning of the California Code and he prayed that he be named conservator of the company's assets for the benefit of the creditors and policyholders. An order was thereupon entered by the court appointing the Commissioner as conservator of the company and on the same day he applied for and obtained another order which appointed him liquidator of the company.
As soon as the property of the company was taken over by the Commissioner, he, acting in his capacity as conservator, petitioned the court for authority to rehabilitate the company and submitted a plan embodying an agreement, to be executed by the company and himself as Commissioner, with a new corporation which he would form, all of whose capital stock he would purchase with the assets of the old company, and to which he would transfer most of the assets, retaining the stock of the new company and certain other assets of the old company. This plan submitted by the Commissioner, which is called a rehabilitation and reinsurance agreement, was subsequently approved by the California court after due proceedings which were contradictorily held with creditors and policyholders of all classes of the company. The agreement as approved by the court provided that the Pacific Mutual Life Insurance Company, the defendant in this case, hereinafter called the new company, would reinsure the risks of the old company under the same terms and conditions as provided for in the contracts executed by the old company excepting the outstanding noncancelable policies of health and accident insurance, as to which the new company agreed to assume only a percentage of the total liability of the old company under those contracts. In other words, in so far as the two policies now before us are concerned, the new company agreed to assume the obligations of the old company as to *Page 85 
the plaintiff but only to the extent of 45 per cent. of the monthly benefits provided for in the policies in the event the plaintiff became permanently and totally disabled. This agreement of rehabilitation and reinsurance also provided in Section 24 thereof that:
"(24) Policy holders and policy claimants of the Old Company may elect to accept or reject the reinsurance and assumption hereunder of his policy, contract, or claim at any time within seventy-five (75) days after the entry of the order approving this agreement. The filing with the New Company after the entry of the order of the Court approving the agreement of any claim or proof of loss shall constitute an acceptance of this agreement and a waiver of any right to reject the same. Any policy holder or policy claimant who shall fail to notify the New Company, in writing, of his rejection within said period shall automatically be deemed to have assented to and become bound by this agreement, and entitled to the benefits hereof.
"The filing of a claim with the Liquidator shall, unless such claim is withdrawn within seventy-five (75) days after the entry of the order of the Court approving this agreement, be deemed a rejection of such reinsurance and assumption. The New Company may nevertheless, with the consent of the Commissioner, and upon such terms as the New Company in its sole discretion may desire to impose, permit the withdrawal of a rejection whether or not the period for election herein fixed shall have expired, and permit the person so withdrawing his rejection to accept the reinsurance and assumption herein contained.
"Any person electing to accept the reinsurance and assumption herein contained shall thereby be deemed to have entered into a novation with the New Company, and to have released the Old Company from all claims, liabilities, or obligations with respect to his policy or policy claim hereby assumed or reinsured, whether wholly or partially assumed or reinsured."
In addition to assuming liability under the insurance policies issued by the old company, the new company agreed that it would become liable for the payment of certain claims against the liquidator of the old company and covenanted that it "does hereby agree to pay to the Liquidator for payment to claimants an amount equal to the sum of all claims against the Old Company filed with the Liquidator and finally allowed."
After the rehabilitation and reinsurance plan had been approved by the Superior Court of Los Angeles County, an appeal was taken by dissatisfied claimants in the case to the Supreme Court of California. After hearing in that court, the judgment approving the plan was affirmed. See Carpenter v. Pacific Mutual Life Insurance Company of California, 10 Cal.2d 307, 74 P.2d 761. Writs of certiorari were thereafter granted by the Supreme Court of the United States which court, after a review of the case, confirmed the findings of the Supreme Court of California. See Neblett v. Carpenter, 305 U.S. 297, 59 S.Ct. 170, 83 L.Ed. 182.
When the old company came into the State of Louisiana to do business, it was required, under Act No. 172 of 1908 as reenacted by Act No. 158 of 1932, to execute a surety bond for the sum of $20,000 in favor of the Governor for the protection of its Louisiana creditors and policyholders. Such a bond was supplied by it with the American Surety Company of New York as surety thereon. The day after rehabilitation proceedings against the old company had been commenced by the Insurance Commissioner of California in the California courts, to wit, July 23, 1936, E.A. Conway, then Secretary of this State and also a policyholder of the old company, in the proceedings entitled "E.A. Conway v. Pacific Mutual Life Insurance Company of California", No. 218,203 of the docket of the Civil District Court for the Parish of Orleans, applied for and obtained the appointment of a receiver for the old company in conformity with the provisions of Act No. 227 of 1932. The only asset of the company in Louisiana was the bond executed by it with the American Surety Company of New York as surety thereon. Thereafter, several policyholders of the old company, including the plaintiff, intervened in the receivership proceedings claiming damages against it for breach of their policy contracts.
In the intervention filed by the plaintiff in those proceedings, he asserted that he had accepted the reinsurance offered by the new company to the extent of 45 per cent. of the monthly benefits provided for in the insurance contracts and he contended that, since the Louisiana law had required the old company to put up a bond to protect him against loss, he was also entitled to *Page 86 
the damages sustained by him for the 55 per cent. breach of his contracts by the old company notwithstanding his acceptance of the partial reinsurance given by the new company.
The American Surety Company, contending contra, urged that, under the explicit provisions of the rehabilitation agreement, the plaintiff, upon his acceptance of the terms and conditions specified therein, forfeited all of his rights and claims for damages against the old company; that, although the plaintiff had not appeared in the California court, he was bound in law and equity by the proceedings taken therein under the well-established rule of class representation; that claimants holding noncancelable health and accident policies similar to those issued to the plaintiff had appeared before the court in California and had unsuccessfully resisted the provisions of the rehabilitation agreement and that in view of this, he was bound by the judgment of the California court.
On the foregoing issue, the intervention of the plaintiff was thereafter tried before a commissioner duly appointed by the Civil District Court and, after consideration, the commissioner rendered his report to the District Judge recommending that plaintiff's claim for damages be allowed and that his damage be fixed at $850. This recommendation of the commissioner was approved by the District Judge and neither the old company nor its surety, American Surety Company of New York, prosecuted an appeal from the adverse judgment. On the contrary, the American Surety Company of New York paid the amount of the judgment plus interest and costs to the plaintiff with funds which were supplied to it by the new company for that purpose.
The record also reveals that, from the time of the approval of the rehabilitation and reinsurance agreement by the California court, the new company accepted from the plaintiff all premiums falling due under the policies issued by the old company and that it was not until November 16, 1938, that the defendant took the position that it had the right to cancel the noncancelable policies issued to plaintiff at which time it tendered to him all the premiums which he had previously paid it. It is also shown that, in spite of the fact that the plaintiff, in his intervention in the Louisiana receivership proceedings, was claiming that he was entitled to damages notwithstanding his acceptance of the rehabilitation and reinsurance agreement, the defendant company sent him regular premium notices and accepted the premiums falling due under the policies without protest; that, even after the judgment of the Civil District Court awarding him damages had been paid by the American Surety Company with funds supplied by it, it did not immediately attempt to cancel the policies and that it was only after he tendered his check for the premium falling due on one of the policies on November 1, 1938, that the defendant maintained, for the first time, that, because he had been awarded damages against the old company and its surety for breach of contract, it was entitled to cancel the policies.
Upon the company's refusal to accept the premiums tendered by him, the plaintiff instituted this action for an injunction to restrain it from canceling his policies. He asserts that he accepted the partial reinsurance granted by the new company for 45 per cent. of the benefits contained in the policies under the rehabilitation and reinsurance agreement approved by the California court; that the policies are noncancelable and that he had a right, as a Louisiana creditor for whom a bond had been supplied by the old company, to recover damages against the surety on the bond to the extent of 55 per cent. of the insurance which was not covered by the new company notwithstanding that Section 24 of the rehabilitation agreement provides that, in case the reinsurance is accepted by the policyholder, he waives his right to claim damages against the old company.
The position of the defendant is that the plaintiff was entitled to one of two things under the rehabilitation agreement: (1) He could have elected to accept the 45 per cent. coverage granted by it either expressly or tacitly (by failing to notify it of his rejection of the reinsurance plan within 75 days of the date of its approval by the California court) or (2) he could have rejected the coverage offered by notifying it in writing within the time specified in the agreement and claimed damages in the California courts against the old company for breach of contract. It is contended that the plaintiff cannot, under any circumstances, claim damages from the old company and also obtain the partial reinsurance protection from the new company; that, when plaintiff intervened in the Louisiana receivership proceedings and was successful *Page 87 
in obtaining a judgment for damages in the Civil District Court against the surety of the old company, he relinquished the partial insurance granted by it under the rehabilitation agreement and that it is therefore entirely within its rights in canceling his policies.
We do not think that the contention of the defendant company is tenable. The rights of the plaintiff against the old company are governed by the two noncancelable policies of insurance issued to him. When the old company became insolvent and its property was taken over by the conservator in California, a new contract was entered into whereby the present defendant agreed to assume the liability of the old company under the policies issued to the extent of 45 per cent. This agreement of the defendant constituted a contract under which the plaintiff became bound by his failure to affirmatively reject the provisions of the rehabilitation agreement within 75 days from the date of its approval by the Superior Court of Los Angeles County, notwithstanding the fact that he did not make an appearance in the California courts because he was represented in those proceedings by policyholders similarly situated holding policies of the same class as those in the instant suit. See Taylor v. Pacific Mutual Life Insurance Company of California,214 N.C. 770, 200 S.E. 882; Smith v. Swormstedt, 16 How. 288, 14 L.Ed. 942; Hartford Life Insurance Co. v. Ibs, 237 U.S. 662, 35 S.Ct. 692, 59 L.Ed. 1165, L.R.A.1916A, 765; Hartford Life Insurance Co. v. Barber, 245 U.S. 146, 38 S.Ct. 54, 62 L.Ed. 208; and Supreme Tribe v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673.
The plaintiff does not question the binding effect of the rehabilitation agreement and, in the receivership proceedings here in Louisiana as well as in this case, he has been steadfast in his claim that he has accepted the reinsurance offered by the new company. He maintained, however, in his intervention in the receivership proceedings that, in spite of his acceptance of the rehabilitation agreement, he was entitled to recover damages on the bond furnished by the old company in accordance with the laws of Louisiana. His contention was sustained by the Judge of the Civil District Court and the surety of the old company has paid the judgment in his favor.
It is also well to note that the old company and its surety have always contended that the plaintiff had accepted the rehabilitation agreement and that he had, by the terms thereof, forfeited whatever right he might have had against it for damages for breach of contract. Likewise it may be said that the new company, by accepting the payment of premiums on the policies from the date the reinsurance agreement became effective until after plaintiff obtained a judgment against the old company and its surety in the Louisiana receivership proceedings and was paid that judgment, acceded to the proposition that the plaintiff had accepted the partial reinsurance provided by the rehabilitation agreement.
It is also apt to remark that the judgment of the Civil District Court, awarding plaintiff damages against the old company for breach of contract, may be open to criticism as to its correctness since it seems obvious that the plaintiff, in electing to receive the advantages of partial reinsurance afforded by the rehabilitation plan, should have been required to accept the detriment specified therein which consisted of a release of the old company from any and all claims for damages he may have had against it under the policies. However, we are not now called upon to determine the soundness of that judgment since it has been fully liquidated by payment to plaintiff. On the contrary, we are now presented with the reverse of the situation — that is, whether the fact that plaintiff made claim for damages against the old company (at a time after the specified deadline for rejecting the plan), and was successful in obtaining a judgment against it and its surety, had the legal effect of a relinquishment on his part of the partial reinsurance granted by the new company under the rehabilitation agreement.
Section 24 of the rehabilitation and reinsurance plan provides (1) that, if the reinsurance granted is not rejected within 75 days of the date the plan is approved by the court, then the policyholder shall be deemed to have elected to accept the terms and conditions of the agreement and (2) that, in case he does accept, he releases the old company from any claims he may have against it for breach of contract. It is conceded here that plaintiff, by his failure to reject within the time specified, accepted the plan. Is his acceptance of the reinsurance rendered null by reason of the fact that, in spite of the provision *Page 88 
whereby he agreed to release the old company from liability for breach of contract, he nevertheless asserted such a claim and was successful in maintaining it? We think not. There is no stipulation contained in the agreement to the effect that, if the policyholder, after accepting the reinsurance, claims damages against the old company, he shall be deemed to have forfeited his right to reinsurance. In truth, the only provision in the agreement with respect to the release of any claim is one which runs solely in favor of the old company — that is, if the policyholder accepts the reinsurance provided for and then files claim against the old company for damages, the old company has the right to maintain that, since he has accepted the benefits of reinsurance, he has released it from any liability in the premises. Of course, if the plaintiff had formally notified the defendant company that he would not accept the reinsurance and would have later brought suit against it to compel it to assume liability under his policies, it would have been fully protected by his previous rejection of the plan. Here, however, the plaintiff, by his failure to reject the plan within the time specified, has accepted it and the fact that he has been successful in obtaining a judgment for damages against the old company on the surety bond provided by it does not afford to the defendant a legal ground for its attempt to cancel his policies.
And it is not sufficient for the new company to say that it was required to reimburse the liquidator for any claim that might be allowed against the old company. It may be that, under the circumstances, it could have intervened in the receivership proceedings here in Louisiana and have resisted the plaintiff's demand for damages. It was most certainly aware that plaintiff was making such a claim which was being denied by the bondsman of the old company on the ground that plaintiff had abandoned his rights against the old company by accepting the rehabilitation agreement. But it did not intervene. On the contrary, when the issue presented was decided adversely to the bonding company, it did not appeal therefrom as a party in interest but it supplied the funds to the bonding company to pay the judgment in plaintiff's favor.
Aside from this, it seems very clear to us that the defendant company has, by its conduct, estopped itself from asserting that the plaintiff has waived his right to the reinsurance offered by it under the agreement in filing a claim for damages against the old company and its surety. Shortly after the receivership proceedings were instituted in Louisiana, the plaintiff intervened therein and claimed damages against the old company for a 55 per cent. breach of contract. The defendant surety asserted that, since plaintiff had accepted the plan as approved by the California courts, he had released the old company from all claims he might have had against it. Unquestionably, the new company was fully acquainted with the recitals of plaintiff's intervention as the record in the receivership proceedings in the Civil District Court shows that, acting through its agents, Lyman and Flynn, it attempted to compromise plaintiff's claim and that it was successful in settling similar claims with other intervenors for the sum of $9,700. Notwithstanding all of this, the defendant continued to send premium notices to the plaintiff and accepted premium payments from him without protest.
Counsel for the defendant say that it was not in a position, during the pendency of plaintiff's claim in the Louisiana receivership proceedings, to accept plaintiff's premium payments under protest because the bonding company was there contending that, since plaintiff had accepted the partial reinsurance, he had thereby waived his right to claim damages against the old company for breach of contract and because it was liable to plaintiff until such time as it was decided that the surety of the old company was responsible in damages and the claim allowed against the California liquidator. But we see no reason why the defendant could not have notified the plaintiff that his premiums would be tentatively accepted and that, in case he was successful in maintaining his claim for damages against the old company, it would exercise the right of cancellation. Such a course of conduct on the part of the defendant would have clearly advised the plaintiff of what he could expect in the event his claim for damages against the old company was allowed. He could have then and there decided whether it would be to his benefit to abandon his theory that he had accepted partial reinsurance and was entitled to claim damages against the old company for a 55 per cent. breach of the contracts or he could have rejected the reinsurance and claimed damages for a total breach. Again, he might *Page 89 
have decided that, since he was faced with the possibility of losing the partial coverage granted by the defendant company under the policies, it would be preferable for him to discontinue his claim for damages. The defendant, however, by its silence, manifestly led the plaintiff to believe that, no matter what disposition was made of his claim for damages, he would be entitled to maintain the reinsurance benefits granted him by the rehabilitation plan. Under these circumstances, we have no hesitancy in holding that its failure to speak, when the situation was such as to require it to do so, now estops it from contending that, because the plaintiff was successful in having his claim for damages recognized against the old company, it has acquired the right to cancel the policies.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.