## SOVEREIGN CAMP OF THE WOODMEN OF THE WORLD v. BOLIN ET AL.

No. 31. Argued October 21, 1938.—Decided November 7, 1938.

Mr. *John T. Harding,* with whom *Messrs. Rainey T. Wells* and *David A. Murphy* were on the brief, for petitioner.

68

*Mr. Miles Elliott,* with whom *Messrs. Ray Weightman, E. H. Gamble,* and *A. F. Harvey* were on the brief, for respondents.

70

MR. JUSTICE ROBERTS delivered the opinion of the Court.

We granted certiorari because of the claim that the judgment of the court below failed to accord full faith and credit to the public acts, records, and judicial proceedings of the State of Nebraska as required by Article IV, § 1 of the Constitution.

The petitioner is a fraternal beneficiary association organized under the laws of Nebraska, having a lodge system, a ritualistic form of work, and a representative form of government. It has no capital stock, and transacts its affairs without profit and solely for the mutual benefit of its members and their beneficiaries. It makes provision for the payment of death benefits by assessments upon its members and issues to members certificates assuring payment of such benefits.

In 1895 the petitioner adopted a by-law authorizing the issue of life membership certificates. Under this by-law a member entering the order at an age greater than 43 years was entitled to life membership without the payment of further dues and assessments when the certificate had been outstanding 20 years. In June 1896, while the by-law remained unrepealed, Pleasant Bolin, who was over 43 years of age, joined a Missouri lodge of the petitioner and received a certificate of membership which recited that while in good standing he would be entitled to participate in the beneficial fund to the amount of $1,000 payable to his beneficiaries and to the sum of $100 for placing a monument at his grave. The certificate recited that it was issued subject to all the conditions named in the constitution and laws of the fra-

ternity and was endorsed with the words "Payments to cease after 20 years."

After Bolin's death, the respondents, as beneficiaries, brought action to recover upon the certificate. The petitioner's answer set up that Bolin had ceased to pay the required dues and assessments in July 1916, and his certificate had therefore become void; that the by-law making the certificate fully paid after twenty years was *ultra vires* of the association and had been so declared by the Supreme Court of Nebraska in a class suit brought by one Trapp, the holder of a certificate similar to that of Bolin; that, under Article IV, § 1, of the Constitution, full faith and credit must be given by the courts of Missouri to this decision of the Supreme Court of Nebraska. The respondents replied that the contract was made and delivered in Missouri and was to be construed and enforced according to Missouri law; that, at the date of its consummation, the petitioner had no license or authority to transact business in Missouri as a corporation or otherwise, and the certificate was therefore to be considered as issued pursuant to, and governed by, the general insurance laws of Missouri; that Bolin having fully performed in accordance with the terms of the certificate, the petitioner was estopped to plead *ultra vires;* and that in truth the contract was not *ultra vires* of the petitioner.

A jury was waived and the case was tried to the court. The respondents proved the issue of the certificate and Bolin's payments for twenty years thereafter. The petitioner proved the adoption of the by-law purporting to authorize the issue of "payments to cease" certificates; and put in evidence an exemplified copy of the record in *Trapp* v. *Sovereign Camp of the Woodmen of the World,* 102 Neb. 562; 168 N. W. 191, wherein it was decided that petitioner never had power under the law of Nebraska to issue such a certificate. Judgment went for the re-

spondents. The petitioner appealed to the Supreme Court of Missouri, which remanded the cause to the Kansas City Court of Appeals [1] on the ground that it involved no constitutional question. The latter affirmed the judgment [2] and adhered to its decision on rehearing.[3]

The court below based its decision on the following grounds:

> Under the law of Missouri the certificate was a Missouri contract because it was delivered to Bolin in Missouri and he made his payments there; all issues respecting rights arising out of the contract must, therefore, be adjudicated according to the decisions of the Missouri courts. The question then arises what system of local law is applicable,—that relating to fraternal beneficiary societies or that applicable to old line insurance companies. At the time the contract was made there was no local statute providing for the licensing of foreign fraternal beneficiary societies. Under the decisions of the Missouri courts the petitioner must, therefore, be denied the immunities extended by statute to domestic fraternal beneficiary associations and must be taken to have been doing business in Missouri under the State's general insurance laws, and the certificate must be regarded as a contract of general or old line insurance. This conclusion is not altered by the nature of the society granting the insurance because the character of the insurance, so far as Missouri is concerned, depends on the terms of the contract only. Whatever may be the character of the petitioner in the eye of the Nebraska law it need not have the same character in Missouri. Whether it is a fraternal beneficiary society when sued in Missouri is a question of local law. Even

---

[1] *Bolin* v. *Sovereign Camp, W. O. W.*, 339 Mo. 618; 98 S. W. 2d 681.

[2] *Bolin et al.* v *Sovereign Camp, W. O. W.*, — Mo. App. —; 112 S. W. 2d 582.

[3] *Bolin et al.* v. *Sovereign Camp, W. O. W.*, — Mo. App. —; 112 S. W. 2d 592.

if the issue of the certificate be an *ultra vires* act under the law of Nebraska it does not follow that it is such under the law of Missouri. The contract is not *ultra vires* under the law of Missouri or, if so, the petitioner may not plead *ultra vires* because, in the light of Missouri law, the contract is an insurance contract with an old line insurance company and the petitioner, under Missouri decisions, cannot, in the circumstances disclosed, avail itself of the fact that the contract was in excess of its charter powers.

The court refused to give force or effect to the decision of the Supreme Court of Nebraska in *Trapp* v. *Woodmen, supra,* saying that case did not hold the issue of such a certificate *ultra vires* in the sense that it was prohibited by positive statute; that the contract being a Missouri contract its *ultra vires* character must be adjudged by the local law irrespective of what the courts of the domicile had held; that the respondents in the present case relied on an estoppel of the petitioner to plead *ultra vires,* whereas no such issue was presented or decided in the *Trapp* case.

We hold that the judgment denied full faith and credit to the public acts, records, and judicial proceedings of the State of Nebraska.

*First.* The beneficiary certificate was not a mere contract to be construed and enforced according to the laws of the State where it was delivered. Entry into membership of an incorporated beneficiary society is more than a contract; it is entering into a complex and abiding relation and the rights of membership are governed by the law of the State of incorporation. Another State, wherein the certificate of membership was issued, cannot attach to membership rights against the society which are refused by the law of the domicile.[4]

---

[4] *Modern Woodmen* v. *Mixer,* 267 U. S. 544, 551; *Royal Arcanum* v. *Green,* 237 U. S. 531, 542.

*Second.* The circumstance that at the time the certificate was issued domestic fraternal societies were exempted from the operation of the general insurance law of the State, and no similar exemption was extended to foreign societies, cannot enlarge the statutory and charter powers of such a foreign society. The fundamental error of the court below springs from a misapprehension of the effect to be given to the absence of provisions exempting foreign beneficiary associations from the statutes applicable generally to old line life insurance companies. Missouri has statutes affecting the validity and enforcibility of stipulations inserted in life insurance policies and other statutes dealing with procedure in actions upon such policies. In 1879 a statute was passed authorizing the incorporation of fraternal beneficiary societies and exempting them from the operation of the general laws of the State in respect of insurance companies.[5] An act of 1881 exempted both domestic and foreign societies from the operation of the general insurance laws.[6] This act did not require the registration of foreign associations but accorded them the same exemption as domestic associations. In 1889 the legislature adopted an act revising the statutes dealing with private corporations and therein provided that domestic beneficial societies should not be subject to the general insurance laws of the State, but omitted any reference to foreign associations.[7] It was not until 1897 that foreign beneficiary associations were required, as a condition of doing business within the State, to register and to file annual reports and to designate the Superintendent of the Insurance Department as the person upon whom process might be served. If they

---

[5] Act of March 8, 1879; Laws 1879; R. S. 1879, §§ 972, 973.

[6] Act of March 8, 1881; Laws of 1881, p. 87.

[7] Act of May 7, 1889; R. S. 1889, §§ 2823, 2824.

complied with the provisions of this statute they were exempted from the operation of the general insurance laws.[8] This act has been carried forward in later revisions and, with changes immaterial to our inquiry, remains in force. From this hiatus in the statutes governing foreign beneficiary associations it resulted that while foreign associations were not forbidden from organizing lodges, obtaining members, and issuing benefit certificates in Missouri, and their certificates so issued were not deemed to be void,[9] certificates issued in the interim between 1889 and 1897 were construed in accordance with, and actions thereon were governed by, the provisions of the general insurance laws.[10] The Missouri courts, however, were apparently not called upon in any of the cases affected by this rule of decision to pass upon the question of the power of such a society, under the law of the State of its incorporation, to write a particular sort of beneficiary certificate;[11] but this court reversed a judgment of the Supreme Court of Missouri which, without reference to the distinction between the rule applicable to domestic and foreign societies, reëxamined and refused to give effect to a judgment of the Supreme Court of Connecti-

---

[8] Act of March 16, 1897; R. S. 1899, c. 12, Art. 11, §§ 1408, 1409, 1410.

[9] *Schmidt* v. *Foresters*, 228 Mo. 675, 686; 129 S. W. 653.

[10] *Kern* v. *Legion of Honor*, 167 Mo. 471, 479, 484; 67 S. W. 252; *Schmidt* v. *Foresters, supra; Mathews* v. *Modern Woodmen*, 236 Mo. 326; 139 S. W. 151; *Brassfield* v. *Maccabees*, 92 Mo. App. 102; *Gruwell* v. *Knights and Ladies*, 126 Mo. App. 496; 104 S. W. 884.

[11] In *Kern* v. *Legion of Honor, supra*, the court said, p. 485: "The contention that the plaintiff as husband could not be the beneficiary under the laws of Massachusetts or under its charter and by-laws, is not open to discussion or adjudication. No such issue was raised in the pleadings or asserted upon the trial in the circuit court. . . . The defendant chose its grounds of defense, none others are open in this court."

cut, the court of the domicile, with respect to the powers of a Connecticut association.[12]

The court below was not at liberty to disregard the fundamental law of the petitioner and turn a membership beneficiary certificate into an old line policy to be construed and enforced according to the law of the forum. The decision that the principle of *ultra vires* contracts was to be applied as if the petitioner were a Missouri old line life insurance company was erroneous in the light of the decisions of this court which have uniformly held that the rights of members of such associations are governed by the definition of the society's powers by the courts of its domicile.[13]

*Third.* The doctrine of estoppel was erroneously invoked to avoid the force and effect of the Nebraska judgment. The court below was of the opinion that, as the petitioner had issued a "payments to cease after 20 years" certificate, and as Bolin had fully performed on his part by paying all dues and assessments over the named period, the petitioner was estopped to plead its lack of power to issue such a certificate. This again was on the theory that whatever might be the nature of the petitioner's organization in Nebraska, for the purposes of this action it must be treated as an old line insurance company in Missouri. It was further held that no question of estoppel was decided in the *Trapp* case.

As to the first of these positions, it need only be said that the *Trapp* case was a class suit in which it was determined that the petitioner lacked power, under the law of Nebraska, to issue such certificates. In such a suit the

---

[12] *Barber* v. *Hartford Life Ins. Co.*, 269 Mo. 21; 187 S. W. 867, reversed *Hartford Life Ins. Co.* v. *Barber*, 245 U. S. 146; see, also, *Johnson* v. *Hartford Life Ins. Co.*, 166 Mo. App. 261.

[13] *Hartford Life Ins. Co.* v. *Ibs*, 237 U. S. 662; *Hartford Life Ins. Co.* v. *Barber*, 245 U. S. 146; *Royal Arcanum* v. *Green*, 237 U. S. 531; *Modern Woodmen* v. *Mixer*, 267 U. S. 544.

association represents all its members and stands in judgment for them, and even though the suit had a different object than the instant one it is conclusive upon all the members of the association with respect to all rights, questions, or facts therein determined.[14]

With respect to the second position, it appears from the record that Trapp, in the suit in Nebraska, pleaded that the association was estopped to deny its power to issue the form of certificate in question, and the opinion of the Nebraska court, by reference to a case decided on the same day, clearly indicates that the issue of estoppel was considered and determined adversely to the plaintiff.

*Fourth.* Under our uniform holdings the court below failed to give full faith and credit to the petitioner's charter embodied in the statutes of Nebraska as interpreted by its highest court.[15]

The judgment is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

---

[14] *Hartford Life Ins. Co.* v. *Ibs, supra,* p. 673.

[15] *Royal Arcanum* v. *Green, supra,* pp. 540, 543, 546; *Hartford Life Ins. Co.* v. *Ibs, supra,* p. 669; *Hartford Life Ins. Co.* v. *Barber, supra,* p. 151; *Modern Woodmen* v. *Mixer, supra,* p. 551.