### Ware v. Ware et al.

Feb. 22, 1946.

As Extended on Denial of Rehearing

May 14, 1946.

Jay W. Harlan and Chenault Huguely for appellant.

Clay & Clay and Nelson D. Rodes for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The question presented herein has been tossed back-

ward and forward for ultimate decision between the courts of Kentucky and of New Mexico—each rendering contradictory decisions—since the year 1925 in the manner of a ball in a basket ball game, but with less frequency. This appeal calls upon us as referee to discontinue the game and declare the winner.

The facts are: J. F. Ware, a citizen and resident of Boyle County, Kentucky, died testate in October, 1924. He appointed as executor of his will the Farmers National Bank of Danville, Kentucky, and likewise designated it as trustee of a trust fund which he created under item (2) of his will, and by which he devised to his wife the income from $10,000 "for and during her natural life", to be paid by the Bank as such trustee under the directions of the will "annually or semi-annually", and at her death "to belong to my estate, and is to go as hereinafter provided for in this my will." He then made specific bequests, and in item (6) he devised to his son, appellant L. W. Ware, one-half and to his two grandchildren, Elicia and A. T. Ware, the other half of the balance of his property, in which he expressly included the $10,000 trust fund after the death of his wife.

At that time his son, the appellant, L. W. Ware, had located himself in the state of New Mexico, residing on some of the land which his father had acquired in Union County, New Mexico, under contracts between the son and his father prescribing the terms of such occupancy. Shortly after the death of J. F. Ware his son, L. W. Ware, qualified as ancillary executor of the property of J. F. Ware located in that county and state, consisting of land and some notes of parties who had borrowed from J. F. Ware sums of money secured by mortgages on land owned by the borrowers in the same county and state. Following the appointment of L. W. Ware as such ancillary executor he made a report in 1925 to the probate court of the county and state of his residence, in which he asserted a claim due to him against the estate of his father amounting to $3,175 for improvements put upon decedent's land in New Mexico by claimant, L. W. Ware, and another one for $1,500 alleged to be for supporting and maintaining Chas. C. Ware and Stanley Ware who had visited their uncle and remained with him in New Mexico for some time, and which was done as alleged by him "at the instance and request" of his father. The probate court on an ex parte hear-

ing allowed those two claims against the estate of decedent.

Following the judgment of the New Mexico probate court (or perhaps just before then) the principal and domestic executor filed in the Boyle circuit court an action to settle the estate of J. F. Ware that was located in the state of Kentucky, to which action L. W. Ware was made a defendant along with others. He filed his answer in that action in which he set up the two claims that the New Mexico probate court had allowed him, but that court (Boyle circuit) rejected his claims and declined to recognize them as valid ones against the estate of the decedent. That judgment was rendered on April 28, 1928.

The entire assets of the estate of decedent located in Kentucky were insufficient to pay in full the devises made in decedent's will, and the amount thereof after payment of costs of administration, was prorated among the devisees according to the amount they received thereunder. On February 21, 1930, L. W. Ware individually and as ancillary executor filed suit in the district court of Union County, New Mexico, against the Farmers National Bank of Danville and other persons interested in the estate of J. F. Ware, in which he ignored the judgment of the Boyle circuit court disallowing the claims in his favor by the probate court of Union County in New Mexico, and asserted that such claims were valid and in which he also alleged other items of cost and expenses which he had incurred as such ancillary representative. He then sought the sale of decedent's real estate located in the same county and state and to apply the proceeds to the payment of his reasserted claims and some others, plus costs and expenses.

The defendants in that action—as was also true in the probate court allowing the claims in favor of appellant—were proceeded against by constructive service, but in the district court action filed in 1930 the Kentucky executor of decedent's estate entered its appearance, as did also the devisees of one-half of the remaining estate of the decedent under clause (6) of his will as set out supra. In their answers they pleaded the facts hereinbefore stated, and also pleaded and averred that the judgment of the Boyle circuit court in 1928 had disallowed the claims of appellant. They also averred and set out in their pleading certain contracts relating to the assert-

ed claims that were entered into between decedent and the appellant, and which had not been complied with, and which expressly refuted his right to assert any such claims. Those pleadings do not appear to have been denied, but nevertheless the foreign district court (corresponding to our circuit court) rejected such defenses and approved the allowance made in 1925 by the New Mexico probate court.

The answering defendants appealed that judgment to the New Mexico Supreme Court where it was affirmed. The judgment so affirmed had ordered and directed the sale of decedent's New Mexico real estate and with the proceeds supplemented by $1,244.45 cash from the collection of New Mexico notes in the hands of the ancillary executor, to pay the balance of plaintiff's claims and accumulated costs of administration, if any, to the Farmers National Bank of Danville, as executor and trustee under decedent's will. However, there was no balance after the payment of the ordered obligations, but on the contrary there was a deficit of $2,687.19 over and above the then assets in the hands of the ancillary executor.

The opinion of the New Mexico Supreme Court is reported in Ware v. Farmers' Nat. Bank of Danville, 37 N. M. 415, 24 P. 2d 269. There was no appeal by appellees herein, or by the executor and trustee of the involved estate, to the Supreme Court of the United States, although a federal question was involved giving the right to prosecute an appeal to the latter court. The failure of a foreign court or one of a different state to follow the provision of the Federal Constitution supra, by giving full faith and credit to a prior judgment of a different state, does not make its judgment *void*, provided it had jurisdiction of the parties and the subject matter, the constitutional provision having no greater effect than to make the original judgment of a different sovereignty res judicata as if it were a court of the same jurisdiction that rendered the first judgment. Therefore, its judgment could not be considered as void on the ground that it erroneously refused to apply a pleaded judicial estoppel. The error of the New Mexico court, consisted in adjudging that the prior judgment of the New Mexico Probate Court though rendered on constructive service alone, was binding on the estate notwithstanding it was a personal judgment imposing a liability on the estate without bringing the latter personally before the court.

The Supreme Court of the United States has impliedly so held in every case brought before it since the adoption of the Federal constitutional provision, four of which are: Milliken et al. v. Meyer et al., 311 U. S. 457, 61 S. Ct. 339, 85 L. Ed. 278, 132 A. L. R. 1357; Marin v. Augedahl, 247 U. S. 142, 38 S. Ct. 452, 62 L. Ed. 1038, 1039; Christmas v. Russell, 5 Wall. 290, 72 U. S. 290, 18 L. Ed. 475; Sovereign Camp. W. O. W. v. Bolin, 305 U. S. 66, 59 S. Ct. 35, 83 L. Ed. 45, 119 A. L. R. 478. Others are listed in United States Supreme Court Digest, Vol. 6, section 361, under the heading of "Judgment". In some of those cases the judgment appealed from was reversed because of the *error* of the state court in failing to give full faith and credit to a foreign judgment; whilst others were affirmed where the judgment appealed from did recognize and apply such provision. On failure of appellees to prosecute an appeal to the Supreme Court of the United States from the New Mexico judgment it became final and not subject to collateral attack or rejection by the Boyle circuit court.

On March 3, 1934, appellant, as ancillary executor made his final settlement in the New Mexico probate court and in his application therefor he sought and obtained constructive service against the heirs and devisees of the decedent in Kentucky, as well as against the executor and trustee under J. F. Ware's will. In his application for such final settlement he set forth the condition of his accounts as such representative, as well as his claims and other expenses and costs of administration, including attorney's fees, and his fees for acting as such. Exceptions were filed thereto in which the defenses to his claims, hereinbefore referred to, were again urged, but were again rejected and overruled and the final order of that probate court was a judgment as hereinbefore stated.

On February 23, 1944, the Farmers National Bank of Danville in its representative capacity filed this action in the Boyle circuit court against all of the interested parties under the will of J. F. Ware—one of whom was appellant who was proceeded against by constructive service—and in which plaintiff sought the advice of the court in finally dividing the residuary estate of the decedent. In its petition it alleged the insufficiency of the net assets in plaintiff's hands to pay the claims of the legatees under the will. It was then alleged that appel-

lant herein as ancillary executor in New Mexico had re-asserted his claims against the estate in the New Mexico court which allowed them, notwithstanding the fact that the Boyle circuit court had disallowed them in its 1928 judgment.

The application to the New Mexico district court to sell the land in that state to pay debts of the decedent, which was set out in that pleading, was then averred, but it was also alleged that "the Kentucky executor of J. F. Ware was not informed of the judgment in New Mexico allowing such old claims against J. F. Ware until long after such judgment had been entered in the court in New Mexico"; that no summons had ever been served on the Kentucky executor that any attempt would be made by that foreign court to relitigate the claims that the Boyle circuit court had denied by its judgment in 1928; that the latter judgment in addition to denying the claims of L. W. Ware directed him to remit the monies arising from the assets in his hands to the Kentucky executor, but which had not been done and because of which the Kentucky assets were insufficient to pay in full the claims of the legatees under the will of decedent. The plaintiff then expressed doubt as to whether or not he should pay to appellant any part of the legacies to L. W. Ware under his father's will until he made a complete showing of his disposition of the assets that came to his hands and the distribution he made of them.

Appellant entered his appearance and filed his answer in which he set out all of the facts hereinbefore recited including, of course, the proceedings and judgments of each of the New Mexico courts allowing and approving his claims and also the final one of the New Mexico probate court entered in 1934, in which it was adjudged that the entire amount that came into his hands as ancillary executor had properly and legally been accounted for and that he had not received sufficient assets by $2,687.19 to pay the New Mexico creditors, including himself, and the cost and expenses incurred.

The defendants, Ansel T. and Elicia Ware, first filed a demurrer to that answer and then filed their answer and cross-petition against L. W. Ware in which they set out the facts of the litigations and the prior judgment of the Boyle circuit court of 1928 disallowing the claims of L. W. Ware, and also the judgments in the New Mexico courts allowing such claims. They then

asked the court to approve and enforce its 1928 judgment and, in substance, to disallow appellant's claims which it had previously done in that judgment, which if done there would be sufficient net assets to pay the legatees in full. The demurrer filed to the answer of L. W. Ware was sustained, and his demurrer filed to the answer and cross-petition of his co-legatees was overruled. Appellant declined to plead further, and the court then adjudged: "that the answer and amended answer of the defendant, Luther W. Ware, be stricken and that he take nothing thereby, and further adjudges that Luther W. Ware is not entitled to participate in the distribution of assets of the estate of J. F. Ware now in the hands of the plaintiff, Farmers National Bank of Danville, Ky., unless and until he shall render a full accounting to this court of all moneys and goods received by him as ancillary administrator of the estate of J. F. Ware in the State of New Mexico, and until the defendants Ansel T. Ware and Elicia O. Ware shall have been equalized and receive an amount equal to that received by Luther W. Ware from the estate of J. F. Ware, deceased, * * *". From that judgment appellant prosecutes this appeal.

The condition of the record, as so outlined, forcefully reminds us of a favorite expression of a distinguished ex-member, and chief justice, of this court, Hon. Rollin Hurt, following his outlining of similar complications in the consultation room, which is, "So you see how it is."

It is perfectly obvious from the facts as we have outlined them that the question submitted is to be determined by a correct interpretation and application of section I, Article IV of the Federal Constitution, saying: "Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records, and Proceedings shall be proved, and the Effect thereof."

In 34 C. J. 1125, section 1602, the text, after giving a history and the reasons for the insertion of that requirement in the Federal Constitution, says: "But it is now settled that judgments rendered by courts of sister states are entitled to the same recognition accorded to judgments of domestic courts; and that they are entitled to the same faith and credit in every state as in the state

where rendered so that they are, or are not valid and conclusive in other states accordingly as they are or are not in the state of their rendition. The obligation to accord full faith and credit to a valid judgment, other than for lack of jurisdiction of the person or subject matter, or for the enforcement of a penalty, is without limitation. Furthermore, courts should not determine what part of a judgment of a court of another state should be effective and what part not, as if such judgment is regular on the face of the record it must be given effect in all its terms. Also the constitutional and statutory provisions referred to protect a judgment of a court of a sister state against collateral impeachment.''

In note 48 to that text, and on page 1126, there are cited cases from the U. S. Supreme Court and the courts of last resort from practically every state in the Union in support thereof.

The first Kentucky case applying that interpretative rule is Rogers v. Coleman, Hardin 413, 3 Am. Dec. 733. Other later cases are also listed, and we have been unable to find any case from this court calling in question such rulings. On the contrary they are approved in the text of 15 R. C. L. 927, section 407, and also in the text of 12 Am. Jur. 377, section 702. It is also a familiar and universally approved doctrine that an ancillary representative of assets of a deceased person residing in another state has the right and authority to administer such foreign assets in accordance with the prevailing law of his state, and to pay the costs of any necessary litigation incurred by him in such settlement. But no personal judgment may be rendered or obtained by him so as to bind the decedent's estate within the state of his domicile at the time of his death. That principle is so firmly settled that we deem it unnecessary to fortify it by either text or opinions. Hence the attempted rendition of the personal judgment by the New Mexico probate court in 1925 for the excess claims over assets would not be binding as an obligation against the personal representative at the home of the decedent. Therefore, if nothing else had later occurred the 1925 judgment of the New Mexico probate court as wholly unauthorized when it was rendered, and, perhaps, could not be validated, since, it would be void because no representative of the principal estate was actually before the court at that time, and the judgment being a personal

one as distinguished from an in rem judgment. See Combs v. Combs, 249 Ky. 155, 60 S. W. 2d 368, 89 A. L. R. 1095, and Baker v. Baker, Ecclos & Co., 162 Ky. 683, 173 S. W. 109, L. R. A. 1917C, 171. Our opinion in the latter case was appealed to the Supreme Court of the United States which it affirmed in an opinion reported in 242 U. S. 394, 401, 37 S. Ct. 152, 61 L. Ed. 386, 392.

However, the appellant does not in this instant case seek judgment over for the balance of his alleged claim of $2687.19 amount in this action in the Boyle circuit court. He only seeks a recognition by the court in this case of his actions in settling that part of his father's estate located in the state of New Mexico which, of course, includes the allowance of his individual claims to the extent of foreign assets, and other New Mexico debts which he claims to have paid with the assets coming into his hands.

Notwithstanding the absence of personal service upon, or entered appearance of any of the appellees herein in the probate proceedings resulting in the judgment of the probate court rendered in 1925, the validity of that judgment as to claims allowed and distribution of the New Mexico assets, was upheld in 1930 by the district court of Union County in that state, and upon appeal to its Supreme Court the judgment of the district court was affirmed. Under the interpretive rule, as hereinbefore stated supra, the Boyle circuit court in this action was obligated to follow that New Mexico judgment, and had no right to impeach it in this collateral attack, no more than it possessed the right to impeach a similar domestic judgment of the same tenor.

It might, however, be insisted that the Boyle circuit court in rendering the judgment appealed from had the right to require, as it did, a further and additional report by appellant of his acts and doings in the distribution of the New Mexico assets of the estate of J. F. Ware that he may have later received, which would be true but for the fact that his pleadings—to which the court sustained a demurrer—set out in full what he had already done as such ancillary executor in his final report, in which he stated that he had fully and completely wound up the part of the estate located within his jurisdiction, and that no remnant remained unadministered by him and which the probate court in its 1934 judgment

approved. That court had jurisdiction to finally so adjudge on the exceptions filed thereto by appellees and which left no further report from appellant necessary.

It may be that a fraud has been committed by appellant against the estate of his father and the devisees in the latter's will (in support of which the record contains some grounds therefor) but if so it has become so nailed down that we are unable to correct it in this collateral attack upon the foreign judgments of the New Mexico courts.

Wherefore, the judgment is reversed with directions to set it aside and to enter one allowing appellant to participate in his father's estate as directed by the latter's will to the extent of any balance due him after crediting former payments, and for other proceedings consistent with this opinion.