SOVEREIGN CAMP, W. O. W., *v.* WHITE.

(*Nashville,* December Term, 1945.)

Opinion filed May 4, 1946.

Rehearing Denied June 1, 1946.

MOORE & EWING, of Nashville, for plaintiff in error.

JAY EVANS and JOSEPH L. LACKEY, both of Nashville, for defendant in error White.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

In 1896, Edward White filed an application for membership and insurance with the Woodmen of the World, a fraternal benefit organization, incorporated under the laws of the State of Nebraska, having a lodge system, a ritualistic form of work and a representative form of government. It has no capital stock and transacts its affairs without profit and solely for the mutual benefit of its members and their beneficiaries. It makes provision for the payment of death benefits by assessments upon its members, and issues to members certificates assuring payment of such benefits.

In his application White agreed that "all of the provisions of the constitution and laws of the order, now existing or hereafter adopted, form a part of the certificate issued hereon, whether printed on or referred to in such certificate or not." At the time of his application, in 1896, the constitution and by-laws of the defendant contained a provision authorizing the issuance of *life membership* certificates. Under this by-law a member entering the order at an age between thirty-four and forty-two was entitled to life membership without the payment of further dues and assessments, when the cer-

tificate had been outstanding twenty-five years, and it was further provided that after the life membership certificates had been issued, the life member should not be liable for camp dues, assessments or general fund dues. In 1899 this section was repealed.

Furthermore, at the time White made his application for membership the constitution and by-laws contained no provision limiting the time within which claims based upon the death of a member must be filed. In the next year the constitution and by-laws were amended so as to provide that the following conditions, among other, should form a part of every beneficiary certificate: "6: No legal proceedings or recovery under this certificate shall be brought within ninety days after the receipt of proof of loss by the Sovereign Clerk or Head Clerk, and no suit shall be brought upon this certificate unless said suit is commenced within one year from the time when the right of action accrues."

White paid his dues for twenty-five years and thereafter until December, 1926.

The by-laws of the defendant provided that every member should pay specified dues every month, and in case of his failure to do so, should stand suspended, during which suspension his beneficiary certificate should be void. White did not pay his regular dues after December, 1926. The by-laws further provided that should a suspended member pay all arrearages within three months from the date of his suspension, if in good health he should be restored to membership and his beneficiary certificate again became valid. White failed to qualify for reinstatements so that at the time of his death he was a suspended member and, under the by-laws, his beneficiary's certificate was void.

White died April 5, 1930. Suit was brought on the certificate within a year. Various defenses not necessary to mention here were interposed, and the plaintiff took a nonsuit. Thereafter, on the 26th of January, 1932, more than a year after the death of Mr. White, another suit was brought by Mrs. White, beneficiary under said certificate, which was dismissed at the February term, 1934, for want of prosecution. On March 5, 1935, yet another suit was brought seeking a writ of error *coram nobis*, which was dismissed when the court denied the writ. Finally, on March 5, 1935, the present action was instituted, seeking to recover on the contract of insurance issued by the defendant, as beneficiary thereunder. As originally brought it was to recover the face amount of the policy, with interest and the premiums paid for the years in excess of the twenty-five years originally contemplated as the basis of a life membership. A demurrer to this declaration was overruled and pleas were filed of the (1) general issue, (2) contractual limitations, the instant suit not having been brought within a year after the death of White, (3) *res adjudicata*, and (4) a special plea of *ultra vires* setting up that under the law of Nebraska, as interpreted by its Supreme Court in the class suit of *Trapp v. Sovereign Camp Woodmen of the World*, 102 Neb. 562, 168 N. W. 191 (the same party defendant as herein), the Supreme Court of Nebraska had pronounced the provisions of the constitution and by-laws for life memberships, in force at the time of the application of Mr. White, to be *ultra vires* and void.

The plaintiff thereafter amended to ask recovery of all premiums paid under the contract, in case the contract for life membership was held *ultra vires;* also, to allege that there were reserves under which the policy would have been kept in force beyond the date of the death of

White. Pleas of the statute of limitations and to the right of the plaintiff to maintain the suit and again setting up the decision in the *Trapp Case, supra,* were filed.

The trial Court gave judgment for the plaintiff for $1,312.30, apparently based on the benefits under the policy, with interest, less liens for unpaid dues. An appeal was taken direct to this Court.

██ A constitutional question being involved, based upon the failure of the trial Court to give dominant effect to the laws of Nebraska as construed by the Supreme Court of that state, in the class case of *Trapp* v. *Sovereign Camp, supra,* in contravention of Article IV, Section 1 of the Constitution of the United States, this Court assumes jurisdiction.

While a number of questions are raised, that of the effect to be given the decision of the Supreme Court of Nebraska in the case of *Trapp* v. *Sovereign Camp, supra,* is of determinative import. As hereinbefore stated, this was a suit filed by Trapp in behalf of himself and others similarly situated, to require the defendant to issue to him a paid-up life certificate, under the provisions of the constitution and by-laws of the defendant as they existed in 1895. In that case the Supreme Court of Nebraska held, construing the basic statute under which this defendant was organized, that the provision of the by-laws of the defendant providing for life memberships and paid-up certificates was *ultra vires* and void.

In *Hartford Life Insurance Co.* v. *Ibs,* 237 U. S. 662, 35 S. Ct. 692, 59 L. Ed. 1165, L. R. A. 1916A, 765, a case arising in Minnesota, the court considered a certificate of membership in its safety fund department, issued by the Hartford Life Insurance Co., a stock corporation under the laws of Connecticut, conducted on a mutual assessment plan. In the suit under the certificate, the com-

pany defended on the ground that the policy had been forfeited by reason of Ibs' failure to pay the assessment levied. In support of this defense the defendant offered a certified copy of a decree of a Connecticut court, *Dresser* v. *Hartford Life Ins. Co.,* 80 Conn. 681, 70 A. 39, which sustained the position of the company. The plaintiff objected to the admission of this decree on the ground, among others, that she was not. a party to the proceedings in which it was rendered. The trial court sustained her objection, excluded the decree and directed a verdict in her favor. After the Supreme Court of Minnesota, 121 Minn. 310, 141 N. W. 289, Ann. Cas. 1914C, 798, had affirmed that ruling, the case was taken to the Supreme Court of the United States on the question as to whether the Minnesota Courts had failed to give full faith and credit to the judicial proceedings of another State, as required by Article IV, Section 1 of the Constitution of the United States. In disposing of the case the court said (237 U. S. 671, 672, 673, 35 S. Ct. 695, 696, 59 L. Ed. 1165, L. R. A. 1916A, 765):

"It was for the court of the state where the company was chartered and where the fund was maintained to say what was the character of the members' interest— . . . But it was impossible for the company to bring a suit against 12000 members living in different parts of the United States. It was equally impossible for the 12,000 members to bring a suit against the company to determine the questions involved. Under these circumstances Dresser and thirty other members, holding certificates, brought suit 'in their own behalf and in behalf of all others similarly situated.'

". . . But, when such common interest in fact did exist, it was proper that a class suit should be brought in a court of the state where the company was chartered

and where the mortuary fund was kept. The decree in such a suit, brought by the company against some members, as representatives of all, or brought against the company by thirty certificate holders for 'the benefit of themselves and all others similarly situated,' would be binding upon all other certificate holders.

.  .  .  .  .  .  .  .

"On that issue the Connecticut decree was admissible since it adjudged that the company had the right to make advances to pay claims, and could subsequently collect the amount of such claims by an assessment levied as in the present case. Its right so to do having been determined by a court of competent jurisdiction, the decree was binding between the parties or their privies in any subsequent case in which the same right was directly or collaterally involved. For *even if the second suit is for a different cause of action, the right, question, or fact once so determined must, as between the same parties or their privies, be taken as conclusively established so long as the judgment in the first suit remain unmodified.'* "

In Supreme Council of the *Royal Arcanum* v. *Samuel Green*, 237 U. S. 531, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771, it appeared that the Supreme Council was incorporated under the laws of Massachusetts governing fraternal beneficiary organizations. The suit was filed in New York upon a certificate issued by the Supreme Council. The courts of New York declined to recognize, as controlling, the proceedings and judgment of the Supreme Court of Massachusetts, with respect to the nature and powers of the corporation, character of the fund involved, and rights of the members under their certificates. The United States Supreme Court, in discussing this question, said (237 U. S. 542, 543, 35 S. Ct. 727, 728, 59 L. Ed. 1089, L. R. A. 1916A, 771):

629

"Moreover, as the charter was a Massachusetts charter, and the constitution and by-laws were a part thereof, adopted in Massachusetts, having no other sanction than the laws of that state, it follows by the same token that those laws were integrally and necessarily the criterion to be resorted to for the purpose of ascertaining the significance of the constitution and by-laws. . . . In fact, while dealing with various forms of controversy, in substance all these cases come at last to the principle so admirably stated by Chief Justice MARSHALL more than a hundred years ago (*Head* [*& Amory*] v. *Providence Ins. Co.*, 2 Cranch 127, 167, 2 L. Ed. 229, 242), as follows:

" 'Without ascribing to this body, which, in its corporate capacity, is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may correctly be said to be precisely what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties only in the manner which that act authorizes. To this source of its being, then, we must recur to ascertain its powers.' "

The decision of the New York Court was reversed.

In *Hartford Life Insurance Co.* v. *Barber,* 245 U. S. 146, 38 S. Ct. 54, 62 L. Ed. 208, from the Supreme Court of Missouri, 269 Mo. 21, 187 S. W. 867, the question was whether or not the judgment of a Connecticut Court, where the defendant was incorporated, should be followed. The Missouri Court ruled otherwise. The Supreme Court of the United States reversed, re-affirming its holding in *Supreme Council* v. *Green, supra.*

In *Modern Woodmen of America* v. *Mixer,* 267 U. S. 544, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384, coming up from Nebraska, the question was what law controlled,

that of South Dakota, where the certificate was issued, or that of Illinois, the state where the society was incorporated. The Supreme Court of the United States said (267 U. S. 551, 45 S. Ct. 389, 69 L. Ed. 783, 41 A. L. R. 1384): "We need not consider what other States may refuse to do, but we deem it established that they cannot attach to membership rights against the Company that are refused by the law of the domicil. It does not matter, that the member joined in another State. In the above cited case (*Supreme Council of Royal Arcanum* v. *Green, supra*) Green became a member of a Massachusetts corporation in New York, and the State Court held on ordinary principles of contract that his rights were governed by New York law. *Green* v. *Royal Arcanum*, 206 N. Y. 591, 597, 100 N. E. 411. But the decision was reversed and it was held a failure to give full faith and credit to the Massachusetts charter as construed by the Massachusetts Court that Green was relieved by decree from paying assessments increased by the corporation after his contract was made. We are of opinion that the decision in that case governs this, and that the judgment must be reversed."

In the recent case of *Sovereign Camp Woodmen of the World* v. *Bolin,* 305 U. S. 66, 59 S. Ct. 35, 83 L. Ed. 45, 119 A. L. R. 478, the Supreme Court of the United States considered a case which was brought upon the same theory as the case now before us. The opinion in that case deals so clearly with the identical questions presented in the instant case that we quote therefrom at length (305 U. S. 72, 73, 74, 59 S. Ct. 36, 83 L. Ed. 45, 119 A. L. R. 478):

"In 1895 the petitioner adopted a by-law authorizing the issue of life membership certificates. Under this by-law a member entering the order at an age greater than 43 years was entitled to life membership without the pay-

ment of further dues and assessments when the certificate had been outstanding 20 years. In June 1896, while the by-law remained unrepealed, Pleasant Bolin, who was over 43 years of age, joined a Missouri lodge of the petitioner and received a certificate of membership which recited that while in good standing he would be entitled to participate in the beneficial fund to the amount of $1,000 payable to his beneficiaries and to the sum of $100 for placing a monument at his grave. The certificate recited that it was issued subject to all the conditions named in the constitution and laws of the fraternity and was endorsed with the words 'Payments to cease after 20 years.'

"After Bolin's death, the respondents, as beneficiaries, brought action to recover upon the certificate. The petitioner's answer set up that Bolin had ceased to pay the required dues and assessments in July 1916, and his certificate had therefore become void; that the by-law making the certificate fully paid after twenty years was *ultra vires* the association and had been so declared by the Supreme Court of Nebraska in the class suit brought by one Trapp, the holder of a certificate similar to that of Bolin; that, under Article 4, Section 1 of the Constitution [of the United States], U. S. Const. Art. 4, Sec. 1, full faith and credit must be given by the courts of Missouri to this decision of the Supreme Court of Nebraska. The respondents replied that the contract was made and delivered in Missouri and was to be construed and enforced according to Missouri law; . . . that Bolin having fully performed in accordance with the terms of the certificate, the petitioner was estopped to plead *ultra vires*; and that in truth the contract was not *ultra vires* the petition.

"A jury was waived and the case was tried to the court. The respondents proved the issue of the certificate and Bolin's payments for twenty years thereafter. The petitioner proved the adoption of the by-law purporting to authorize the issue of 'payments to cease' certificates; and put in evidence an exemplified copy of the record in *Trapp* v. *Sovereign Camp of the Woodmen of the World*, 102 Neb. 562, 168 N. W. 191, wherein it was decided that petitioner never had power under the law of Nebraska to issue such a certificate. Judgment went for the respondents." On appeal the judgment was affirmed.

The opinion of the United States Supreme Court proceeds (305 U. S. 66, 75, 78, 79, 59 S. Ct. 38, 39, 83 L. Ed. 45, 119 A. L. R. 478):

"We hold that the judgment denied full faith and credit to the public acts records, and judicial proceedings of the State of Nebraska.

"First. The beneficiary certificate was not a mere contract to be construed and enforced according to the laws of the state where it was delivered. Entry into membership of an incorporated beneficiary society is more than a contract; it is entering into a complex and abiding relation and the rights of membership are governed by the law of the state of incorporation. Another state, wherein the certificate of membership was issued, cannot attach to membership rights against the society which are refused by the law of the domicile.

.   .   .   .   .   .   .

"The court below was not at liberty to disregard the fundamental law of the petitioner and turn a membership beneficiary certificate into an old line policy to be construed and enforced according to the law of the forum. The decision that the principle of *ultra vires* contracts

was to be applied as if the petitioner were a Missouri old line life insurance company was erroneous in the light of the decisions of this court which have uniformly held that the rights of members of such associations are governed by the definition of the society's powers by the courts of its domicile.

"Third. The doctrine of estoppel was erroneously invoked to avoid the force and effect of the Nebraska judgment. The court below was of the opinion that, as the petitioner had issued a 'payments to cease after 20 years' certificate, and as Bolin had fully performed on his part by paying all dues and assessments over the named period, the petitioner was estopped to plead its lack of power to issue such a certificate. This again was on the theory that whatever might be the nature of the petitioner's organization in Nebraska, for the purposes of this action it must be treated as an old line insurance company in Missouri. It was further held that no question of estoppel was decided in the *Trapp Case*.

"As to the first of these positions, it need only be said that the *Trapp Case* was a class suit in which it was determined that the petitioner lacked power, under the law of Nebraska, to issue such certificates. In such a suit the association represents all its members and stands in judgment for them, and even though the suit had a different object than the instant one it is conclusive upon all the members of the association with respect to all rights, questions, or facts therein determined.

"With respect to the second position, it appears from the record that Trapp, in the suit in Nebraska, pleaded that the association was estopped to deny its power to issue the form of certificate in question and the opinion of the Nebraska court, by reference to a case decided on the same day, clearly indicates that the issue of estoppel

was considered and determined adversely to the plaintiff.

"Fourth. Under our uniform holdings the court below failed to give full faith and credit to the petitioner's charter embodied in the statutes of Nebraska as interpreted by its highest court." Reversed and remanded.

■ Because of the plainly controlling application of the foregoing decisions by the Court having final authority, this opinion has been largely given over to quotations from these opinions. Under these decisions it is clear that the law of Nebraska as interpreted by its highest Court, governs this controversy. By that law, the provision in the beneficiary certificate as to life membership was *ultra vires* and void.

As above shown, White failed to pay premiums and assessments for a number of years preceding his death. Consequently he was not a member in good standing at the time of his death and his beneficiary certificate cannot be made the basis of a recovery. This holding being conclusive of the rights of the parties, we find it unnecessary to discuss other questions presented.

The judgment is reversed and the suit dismissed.